

RECEIVED

AUG 1 2 2022

By: _____

# C.L. Forensic Solutions, LLC

# Investigative Analysis & Report

### Regarding:

US District Court for the District of New Hampshire 21-CV-198-PB
Chasrick Heredia v Michael Roscoe, et al

C.L. Forensics Solutions Case 22-P-006

### Prepared By:

Carl Lakowicz, Owner
C.L. Forensics Solutions, LLC
P.O. Box 2157
Concord, New Hampshire 03302-2157
(603) 568-0680

---

This report was completed by Carl Lakowicz on August 11, 2022, and is based upon, but not limited to, the materials provided by Stephen T. Martin, Esq. of The Law Offices of Martin & Hipple, P.L.L.C., 390 Loudon Road, Concord, New Hampshire 03301. As additional information becomes available, I reserve the right to review such information and supplement my analysis and report when applicable.

# Preface

The author of this report, Carl Lakowicz, is a retired City of Concord, New Hampshire Police Officer. He is a graduate of the 47th New Hampshire Police Academy. Mr. Lakowicz began his career with the Concord, Police as a Patrol Officer in October 1979, and retired after 20 years of service with the Concord Police Department as a detective in the Fall of 1999.

Through his 20 years of training and experience Mr. Lakowicz is well versed in the use of force, de-escalation, discrimination, and crowd control.

Mr. Lakowicz is also a recognized expert in the field of motor vehicle accident reconstruction and has testified as an expert witness.

Mr. Lakowicz has not met, nor does he know either personally or professionally know Officer Roscoe, Officer Harrington, Officer Stewart, or Officer Nocella.

Mr. Lakowicz has not met, nor does he know, either personally or professionally, Chasrick Heredia, or any other named arrested person(s) in provided discovery material.

# Applicable Materials Reviewed

- Manchester, New Hampshire Police Department Arrest Report for Chasrick Soren Heredia, authored by Officer Matthew T Nocella (100493), Arrest # 18002586, Case # 18-006983.

- Manchester, New Hampshire Police Department Arrest Report for Joshua Heredia, authored by Officer Konrad Jaworowski (100476), Arrest # 18002588, Case # 18-006983.

- Manchester, New Hampshire Police Department Arrest Report for Justin Johnson, authored by Unknown Officer, Arrest # 18002587, Case # 18-006983.

- Manchester, New Hampshire Police Department Arrest Report for Jeff Taylor, authored by Officer Richard J. Valenti (100282), Arrest # 18002584, Case # 18-006983.

- Manchester, New Hampshire Police Department Incident/Investigation Supplemental Report Case Number 18-006983, dated, June 7, 2018, authored by Officer Michael Roscoe (100501).

- Manchester, New Hampshire Police Department Incident/Investigation Supplemental Report Case Number 18-006983, dated, June 6, 2018, authored by Officer Canada A. Stewart (100506).

- Manchester, New Hampshire Police Department Incident/Investigation Supplemental Report Case Number 18-006983, dated, May 11, 2018, authored by Officer Michael Johnson (100475).

- Manchester, New Hampshire Police Department Incident/Investigation Supplemental Report Case Number 18-006983, dated, May 11, 2018, authored by Officer William H. Dann III (100431).

- Manchester, New Hampshire Police Department Incident/Investigation Supplemental Report Case Number 18-006983, dated, May 11, 2018, authored by Detective Louis J. Krawczyk Jr. (100137).

- Manchester, New Hampshire Police Department Incident/Investigation Supplemental Report Case Number 18-006983, dated, May 17, 2018, authored by Officer Jacob W. Yaris (100440).

- Manchester, New Hampshire Police Department Incident/Investigation Supplemental Report, Case Number 18-006983, dated, May 15, 2018, authored by Detective Louis J. Krawczyk Jr. (100137).

- Manchester, New Hampshire Police Department Incident/Investigation Supplemental Report, Case Number 18-006983, dated, May 11, 2018, authored by Officer Nathan F. Harrington (100533).

- Manchester, New Hampshire Police Department Incident/Investigation Supplemental Report, Case Number 18-006983, dated, May 11, 2018, authored by Officer Richard J. Valenti Jr. (100282).

- Manchester, New Hampshire Police Department Incident/Investigation Supplemental Report, Case Number 18-006983, dated, May 11, 2018, authored by Officer Matthew T. Nocella (100493).

- Manchester, New Hampshire Police Department Incident/Investigation Supplemental Report, Case Number 18-006983, dated, May 11, 2018, authored by Officer John Connors (100472).

- Manchester, New Hampshire Police Department Incident/Investigation Supplemental Report, Case Number 18-006983, dated, May 11, 2018, authored by Officer Konrad Jaworowski (100476).

- Manchester, New Hampshire Police Department Incident/Investigation Supplemental Report, Case Number 18-006983, dated, May 11, 2018, authored by Officer William H. Dann (100431).

- Manchester, New Hampshire Police Department Incident/Investigation Supplemental Report, Victim Statement, Case Number 18-006983, dated, May 11, 2018, authored by Officer Cheryl Trudeau (100469).

- Manchester, New Hampshire Police Department Incident/Investigation Supplemental Report, Case Number 18-006983, dated, May 11, 2018, authored by Detective Louis J. Krawczyk Jr. (100137).
- Manchester, New Hampshire Police Department Incident/Investigation Supplemental Report, Case Number 18-006983, dated, May 11, 2018, authored by Officer Jacob W. Yaris (100440).

- Manchester, New Hampshire Police Department Incident/Investigation Supplemental Report, Case Number 18-006983, dated, May 15, 2018, authored by Detective Louis J. Krawczyk Jr. (100137).

- Manchester, New Hampshire Police Department Supporting Affidavit for Arrest W/O a Warrant, Joshua Heredia, Case Number 18006983, dated, May 11, 2018, authored by Officer Matthew T. Nocella (100493).

- Manchester, New Hampshire Police Department Supporting Affidavit for Arrest W/O a Warrant, Joshua Heredia, Case Number 18006983, dated, May 11, 2018, authored by Officer Konrad Jaworowski (100476).

- Manchester, New Hampshire Police Department Supporting Affidavit for Arrest W/O a Warrant, Justin Johnston, Case Number 18006983, dated, May 11, 2018, authored by Officer Nathan Harrington (100533).

- Manchester, New Hampshire Police Department Supporting Affidavit for Arrest W/O a Warrant, Jose Ortiz De La Cruz, Case Number 18006983, dated, May 11, 2018, authored by Officer Nathan Harrington (100533).

- Manchester, New Hampshire Police Department Supporting Affidavit for Arrest W/O a Warrant, Jeff Taylor, Case Number 18006983, dated, May 11, 2018, authored by Officer Richard J. Valenti (100282).

- State of New Hampshire Superior Court Complaint MPD Case #18-006983, Defendant Chasrick Heredia, 05/10/1994, RSA Name: RIOT, Contrary to RSA: 644:1, dated, May 11, 2018, authored by HCAO Prosecutor Ives.

- State of New Hampshire Superior Court Complaint MPD Case #18-006983, Defendant Chasrick Heredia, 05/10/1994, RSA Name: ASSAULT, 2ND DEGREE, Contrary to RSA: 631:2-A, dated, May 11, 2018, authored by HCAO Prosecutor Ives.

- State of New Hampshire Superior Court Complaint MPD Case #18-006983, Defendant Chasrick Heredia, 05/10/1994, RSA Name: SIMPLE ASSAULT, (Officer Stewart) Contrary to RSA: 631:2-A, dated, May 11, 2018, authored by HCAO Prosecutor Ives.

- State of New Hampshire Superior Court Complaint MPD Case #18-006983, Defendant Chasrick Heredia, 05/10/1994, RSA Name: SIMPLE ASSAULT, (Officer Nocella) Contrary to RSA: 631:2-A, dated, May 11, 2018, authored by HCAO Prosecutor Ives.

- State of New Hampshire Superior Court Complaint MPD Case #18-006983, Defendant Chasrick Heredia, 05/10/1994, RSA Name: RESISTING ARREST OR DETENTION-STRUGGLE, (Officer Roscoe) Contrary to RSA: 642:2, dated, May 11, 2018, authored by HCAO Prosecutor Ives.

- State of New Hampshire Superior Court Complaint MPD Case #18-006983, Defendant Chasrick Heredia, 05/10/1994, RSA Name: RESISTING ARREST OR DETENTION-STRUGGLE, (Officer Nocella) Contrary to RSA: 642:2, dated, May 11, 2018, authored by HCAO Prosecutor Ives.

- State of New Hampshire Superior Court Complaint MPD Case #18-006983, Defendant Chasrick Heredia, 05/10/1994, RSA Name: DISORDERLY

CONDUCT-REFUSE TO MOVE, (Officer Roscoe) Contrary to RSA: 644:2 IIE, dated, May 11, 2018, authored by HCAO Prosecutor Ives.

- Eyewitness Erich Stephan- Digital Recording of Incident.

- Eyewitness Harley Valley- Digital Recording of Incident.

- Cell phone recording RFD 7-Bates # MPD 137.mp4.

- Cell phone recording RFD 7- Bates #MPD 138.mp4.

- Cell phone recording RFD 7- Bates #MPD 139.mp4.

- Twelve Thousand Forty-One (12,041).bmp still frames imaged of Bates #RFD 7-MPD.mp4 file.

- Conor McCourt Curriculum Vitae, President of McCourt Video Analysis, and Investigations.

- McCourt Video Analysis, and Investigations report, authored by Conor McCourt, dated, October 31, 2018.

- YouTube video of Harley Valley cell phone video at the following URL: https://www.youtube.com/watch?v=idZTa1ByPOc .

- Twelve-Thousand-One Hundred-Forty-one (12,041 sequenced digital .bmp format images comprising a frame-by-frame breakdown of Harley Valley cell phone video completed by McCourt Video Analysis, and Investigations.

- New Hampshire Public Defender Manchester, New Hampshire Investigation/Interview report of interview with 23- year-old Harley Valley, dated, January 14, 2019, authored by William Freyler.

- New Hampshire Public Defender, Manchester, New Hampshire Investigation/Interview report of interview with 22-year-old Allyson Mateo, dated, July 2, 2018, authored by William Freyler.

- New Hampshire Public Defender, Manchester, New Hampshire Investigation/Interview report of interview with 30-year-old Marcus Moulton, dated, July 24, 2018, authored by William Freyler.

- Plaintiff's Complaint for Damages and Other Relief Jury Trial Demanded, Docket No. 216-2021-CV-00052

- Civil Action No. 1:2-cv-00198-PB Defendants Response to Plaintiff's First Set of Requests for Production upon Defendants Nathan Harrington, Michael Roscoe, Canada A. Stewart, and Matthew Nocella, dated, July 16, 2021.

- AMR NH Ambulance Pre-Hospital Care Report for Canada A. Stewart. Encounter-Level Scanned Documents, dated, May 11, 2018.

- Canada A. Stewart AMR Ambulance Report, dated, May 11, 2018

- Elliot Health Systems Complete Chart for Canada A. Stewart, dated, May 11, 2018

- Lakeview Internal Medicine Office visit record for Canada A. Stewart, dated, December 26, 2018.
- Elliot Health Systems Complete Chart for Michael J. Roscoe, dated, May 11, 2018

- Elliot Health System AMR Pre-Hospital Care Report for Michael J. Roscoe, dated, May 11, 2018.

- Six color print photocopies of injuries to Officer Michael J. Roscoe labeled MPD 158 through MPD 163 Inclusive, unknown author, on unknown date.

- Manchester Police Department Employee Injury and/or Sickness Report for Officer Canada A. Stewart, dated, May 11, 2018.

- Manchester Police Department Employee Injury and/or Sickness Report for Officer Michael J. Roscoe, dated, May 11, 2018.

- Facebook Investigation Memorandum to Julian Jefferson, authored by Will Freyler, dated, February 15, 2019.

- Ten color print images of injuries sustained by Chasrick Heredia, dated. May 15, 2018.

- Deposition Transcript of Detective Michael Roscoe, dated, June 7, 2022.

- Deposition Transcript of Officer Nathan Harrington, dated, June 30, 2022.

## Case Assignment

April 20, 2022, C.L. Forensic Solutions, LLC was retained by Stephen T. Martin, Esq. of The Law Offices of Martin & Hipple, P.L.L.C. to conduct a review and completed a report regarding the May 11, 2018, arrest of then 24-year-old Chasrick Soren Heredia of 354 Kennard Road, Manchester, New Hampshire by Officer Michael Roscoe (100501) of the Manchester, New Hampshire Police Department during an incident that occurred in front of the GlowBar, located at 123 Hanover Street, Manchester, New Hampshire on the initial and subsequent criminal charges noted below:

1. RSA 631:2 Attempted Murder (A Felony)
2. RSA 631:2 Second Degree Assault (B Felony)
3. RSA 644:1 Riot (B Felony)
4. RSA 642:2 Resisting Arrest or Detention (B Felony)
5. RSA 642:2 Resisting Arrest or Detention (A Misdemeanor)
6. RSA 631:2-A Simple Assault on Police Officer Count 1 (A Misdemeanor)
7. RSA 631:2-A Simple Assault on Police Officer Count 2 (A Misdemeanor)
8. RSA 644:2 Disorderly Conduct (A Misdemeanor)

## Manchester Police Incident/Investigation Reports Review

Separate detailed official accounts of the incident were provided by Officer Michael Roscoe, Officer Canada A. Stewart, Officer Nathan F. Harrington, Officer Matthew Nocella, and Officer Richard J. Valenti. Each officer's report was independently reviewed below.

### Officer Michael Roscoe Incident/Investigation Report

On May 11, 2018, at about 1:01 a.m. Manchester Police Officer Roscoe and Manchester Police Officer Harrington, both assigned to the midnight shift on that date, were sent to the Glowbar, nightclub located at 1213 Hanover Street in Manchester for a noise complaint. Upon their arrival at the club Officer Roscoe would later write, *"Upon our arrival, we did not note any excessive noise as the club was still operating during business hours, were about to clear. As I was driving by, I noticed two males at the entrance of the club speaking with another subject I recognized to be the bouncer at Glowbar."* [1] Officer Roscoe would later add in his

---

[1] Incident/ Investigative Supplemental Report. Agency MPD, Case Number 18-006983, page

June 7, 2022, deposition, "*I observed two males very close to another male which I recognized to be, through previous calls for service, as a security for the Glow Bar. He was an employee.*"[2]

Officer Roscoe would later identify the two individuals speaking to the bouncer as 25- year-old Joshua Heredia, identified as HEREDIA by Officer Roscoe for the balance of his report, and 24-year-old Jeff Taylor, identified as TAYLOR for the balance of Officer Roscoe's report. Officer Roscoe then reported, "*I could tell by their body language that TAYLOR and HEREDIA was yelling and sticking his chest out toward the bouncer while TAYLOR was walking around them.*" [3]

Officer Roscoe continued, "*I then observed HEREDIA remove his shirt and step toward the bouncer in an aggressive manner and exited my vehicle to approach them. As I walked up, HEREDIA was putting his shirt back on, and TAYLOR initiated contact with me. I asked if they were having a problem, and TAYLOR immediately called me a "Racist," saying something to the effect or "You're only messing with us because we're black.*" [4]

Officer Roscoe then wrote, "*I explained to TAYLOR that the reason for approaching them was to speak with HEREDIA, and I did not observe TAYLOR to anything wrong.*"[5]

Officer Roscoe noted it was at about this time Officer Stewart arrived on scene to assist and noted that while speaking with TAYLOR, HEREDIA began to walk away, acting like he was uninvolved. Officer Roscoe then wrote, "*TAYLOR continued challenge officers as several other male subjects exited the club and onto the sidewalk where we were standing. It was clear that these subjects were with HEREDIA and TAYLOR, as they greeted each other, and TAYLOR said, "It's his birthday, come on."*

---

1 of 4, dated June 7, 2018, Author Officer Michael Roscoe.
[2] Deposition of Officer Roscoe, Page 104, Lines 3 through 7.
[3] Incident/ Investigative Supplemental Report. Agency MPD, Case Number 18-006983, page 1 of 4, dated June 7, 2018, Author Officer Michael Roscoe.
[4] Incident/ Investigative Supplemental Report. Agency MPD, Case Number 18-006983, page 1 of 4, dated June 7, 2018, Author Officer Michael Roscoe.
[5] Incident/ Investigative Supplemental Report. Agency MPD, Case Number 18-006983, page 1 of 4, dated June 7, 2018, Author Officer Michael Roscoe.

Officer Roscoe then noted in his report that several of these subjects that exited the club were later identified as 24-year-old Chasrick Heredia, 25-year-old Jose Ortiz De La Cruz, 22-year-old Justin Johnston and 22-year-old Harley Valley.[6]

Officer Roscoe then reported that as these subjects exited, they displayed the same rowdy and aggressive behavior, screaming at officers," *You're public servants why you harassing us."*[7]

Officer Roscoe reported at this point the bouncer told the group to leave for the night or go back inside because it was close to closing time and no one else will be allowed back in. As the group deliberated whether to stay, they remained outside the club being loud and boisterous.

Officer Roscoe then noted in his report that several times the group was told by officers to stop yelling and swearing. However, with each lawful order Officer Roscoe wrote they became more belligerent.

Officer Roscoe then asked the bouncer what he wanted to do with HEREDIA. Writing, "...*and he told me that HEREDIA nearly fought another patron inside, and also urinated in the corner of the club, and that he is no longer welcome."*[8]

Officer Roscoe then wrote, *"I informed HEREDIA that he had to leave as the employees no longer wanted him there and he began to walk easterly toward Chestnut Street. The group followed HEREDIA before heading back east in front of the club, however stopped approximately 25 feet from the entrance."*[9]

Officer Roscoe then reports that DE LA CRUZ began pushing CHASRICK (Chasrick Heredia, reported by Officer Roscoe as CHASRICK for the balance of his report) away telling him "Let's go, let's leave," however CHASRICK began to push him back screaming no.

---

[6] Incident/ Investigative Supplemental Report. Agency MPD, Case Number 18-006983, page 1 of 4, dated June 7, 2018, Author Officer Michael Roscoe.
[7] Incident/ Investigative Supplemental Report. Agency MPD, Case Number 18-006983, page 2 of 4, dated June 7, 2018, Author Officer Michael Roscoe.
[8] Incident/ Investigative Supplemental Report. Agency MPD, Case Number 18-006983, page 2 of 4, dated June 7, 2018, Author Officer Michael Roscoe.
[9] Incident/ Investigative Supplemental Report. Agency MPD, Case Number 18-006983, page 2 of 4, dated June 7, 2018, Author Officer Michael Roscoe.

Officer Roscoe then reports CHASRICK then pulled out his cell phone and began to record officers screaming the same things, that we were public servants, and they were on public property. Officer Roscoe continued, writing, *"The group continued yelling and swearing and Officers issued repeated lawful orders to stop their behavior and vacate the area, or they will be subject to arrest."*[10]

Officer Roscoe then wrote that JOHNSTON and DE LA CRUZ repeatedly tried to reason with CHASRICK as he was becoming more and more aggressive and yelling loudly at Officers.

At this time Officer Roscoe reports that the rest of the group poured out in the middle of Hanover Street and continued their behavior. Officer Roscoe wrote, *"At one point, while standing on the center line of Hanover Street, I was giving a lawful order to get out of the street, when DE LA CRUZ turned around and reached out to me, grabbing the area of my duty belt, and pushed me back. I pushed DE LA CRUZ bac to create distance, as said "Police, don't touch me, get out of the street."* [11]

Officer Roscoe continued, writing, *"CHASRICK began pushing past DE LA CRUZ screaming something to the efffect (sic) of "don't' touch him you're being recorded." JOHNSTON and DE LA CRUZ then continued to get CHASRICK out of the street while he recorded and screamed at the Officers, and I again said, "Get out of the street now or you're under arrest."*[12]

Officer Roscoe continued, writing, *"CHASRICK then screamed loudly, "Stop fucking touching me!" at either JOHNSTON or DE LA CRUZ, and I told CHASRICK immediately "Okay, You're under arrest."*[13] Officer Roscoe then reported, *"I reached out and attempted take hold of CHASRICK'S left arm to place him in custody, however he immediately stepped back and pulled his arms backward, preventing me from doing so. I stepped in and took hold of CHASRICK'S left arm attempting to turn him around, while giving verbal commands of "Put your hands behind your back." CHASRICK attempted to pull away however I used the*

---

[10] Incident/ Investigative Supplemental Report. Agency MPD, Case Number 18-006983, page  2 of 4, dated June 7, 2018, Author Officer Michael Roscoe.

[11] Incident/ Investigative Supplemental Report. Agency MPD, Case Number 18-006983, page 3 of 4, dated June 7, 2018, Author Officer Michael Roscoe.

[12] Incident/ Investigative Supplemental Report. Agency MPD, Case Number 18-006983, page 3 of 4, dated June 7, 2018, Author Officer Michael Roscoe.

[13] Incident/ Investigative Supplemental Report. Agency MPD, Case Number 18-006983, page 3 of 4, dated June 7, 2018, Author Officer Michael Roscoe.

*leverage to spin him around and placed him up against a parked car on the roadway.*"[14]

Officer Roscoe continued with his narrative writing, "*While holding onto his left arm, CHASRICK again spun around facing me, sticking his cell phone up to record me. I again attempted to turn CHASRICK around to handcuff him, however he continued to resist arrest by keeping his elbows tight to his body. Officer Harrington assisted me by taking hold of CHASRICK'S upper body to take him to the ground as he was actively resisting and it was not possible to handcuff him standing up. As Ofc. Harrington held CHASRICK, I transitioned to his waist and pulled him to the ground. Officers Stewart and officers Harrington assisted me in rolling CHASRICK onto his stomach to secure him in handcuffs as he continued to violently twist and turn on the ground, preventing us from doing so.*"[15]

Officer Roscoe continued, "*HEREDIA, JOHNSTON, and DE LA CRUZ began to crowd around us bumping into and pushing Officers off of CHASRICK as we attempted to place him into custody, substantially interfering with his arrest. Other club patrons, including Valley continued to surround Officers in the street and recording, yelling profanities and making the situation chaotic.*"[16]

Officer Roscoe continued his narrative, "*As I could tell we were being surrounded, I felt someone push me from behind with enough force to lose my balance, and stood up to push the crowd back. I then observed DE LA CRUZ directly in front of him and while giving loud verbal commands of "Get Back!" I pushed DE LA CRUZ and JOHNSTON back toward the direction of the sidewalk. DE LA CRUZ immediately pushed me back with both hands on my chest, and I immediately grabbed onto him by his shirt and pull him to the ground. I rolled DE LA CRUZ onto his stomach, telling him he was now under arrest, and attempted to secure him into handcuffs.*"[17]

Officer Roscoe then wrote," *While doing this, I heard Ofc. Stewart scream "Let go of me" and "Don't!" repeatedly, an knew they were still fighting with*

---

[14] Incident/ Investigative Supplemental Report. Agency MPD, Case Number 18-006983, page 3 of 4, dated June 7, 2018, Author Officer Michael Roscoe.
[15] Incident/ Investigative Supplemental Report. Agency MPD, Case Number 18-006983, page 3 of 4, dated June 7, 2018, Author Officer Michael Roscoe.
[16] Incident/ Investigative Supplemental Report. Agency MPD, Case Number 18-006983, page 3 of 4, dated June 7, 2018, Author Officer Michael Roscoe.
[17] Incident/ Investigative Supplemental Report. Agency MPD, Case Number 18-006983, page 3 of 4, dated June 7, 2018, Author Officer Michael Roscoe.

CHASRICK on the ground. I called for all units to respond to assist us on my portable radio, and removed my handcuffs to place on DE LA CRUZ's wrists. As I was doing this, I again heard Ofc. Stewart yell loudly, and could hear the stress in her voice. Upon looking over, I observed that she was on top of CHASRICK, perpendicular to his body. CHASRICK was holding Ofc. Stewart by her hair with his left hand and was repeatedly punching her in the face with his right hand, which I saw connecting with her face at least 2 times. I also observed Ofc. Harrington was struggling with another subject, with others surrounding him as well."[18]

Officer Roscoe continued his narrative writing, "I could tell that Ofc. Stewart was in trouble because CHASRICK was pulling her down and she was unable to block his punches, with no Officers to assist her. It should be noted that a large crowd looked on, recorded, and shouted, and no one stepped in to help Officers that were clearly outnumbered and in danger, including Glowbar bouncers who originally asked for our assistance in removing these parties."[19]

Officer Roscoe then wrote, "I believe that Ofc. Stewart was an imminent risk of serious bodily injury due to the fact that CHASRICK was actively grabbing her by the hair and punching her, and I left DE LA CRUZ to assist, dropping my handcuffs on the ground. I ran over and began to deliver hard hand techniques, striking CHASRICK with my closed fists. I made contact with CHASRICK's head approximately 3-4 times, all while he was still holding onto officer Stewart's hair. CHASRICK used the momentum of holding Ofc. Stewarts hair to sit up, and I transitioned to my knees behind him. I observed that CHASRICK the let go of Ofc. Stewarts hair to block his face, and I began to transition to my hands to from behind him, and was going to take hold of him. his wrists, I saw a subject come from my right side and felt something hit me on the left side of my face."

Officer Roscoe continued with his narrative, "The force of whatever hit me was so hard that my vision turned white and I felt as if I briefly lost consciousness. I believed that due to the sheer force and how hard the hit was, that I was just kicked in the face by a subject standing around us. I attempted to turn into the subject and cover my face, when I observed HEREDIA directly in front of me, throwing punches

---

[18] Incident/ Investigative Supplemental Report. Agency MPD, Case Number 18-006983, page 3 of 4, dated June 7, 2018, Author Officer Michael Roscoe.
[19] Incident/ Investigative Supplemental Report. Agency MPD, Case Number 18-006983, page 3 of 4, dated June 7, 2018, Author Officer Michael Roscoe.

*at me. As I begin to stood (sic) up, HEREDIA punched me with a closed fist again on the left side of my face, and as I stood up, HEREDIA punched me again in the forehead. As I stood to my feet, I felt light headed and dizzy, and my knees buckled beneath me. I continue to step toward HEREDIA and covered my head to prevent myself from getting hit again. HEREDIA was looking me right in the eyes, continuously throwing punches at my head. I felt as though HEREDIA was attempting to seriously injure me, as he would not stop, and continued throwing punches as hard as he could. As I stepped forward to grab HEREDIA Ofc. Jaworowski came running from behind me and tackled HEREDIA. Ofc. Jaworowski fell off of HEREDIA tumbling into the street, and I observed HEREDIA attempt to get back to his feet. At that time, I dove onto HEREDIA to prevent him from getting up, and Ofc. Jaworowski came to assist.*"[20]

Officer Roscoe continued with his report narrative writing, "*Ofc. Jaworowski was able to place HEREDIA into handcuffs, and I observed out of the corner of my eye officer Stewart and Ofc. Nocella were still actively fighting CHASRICK, who's leaning up against a parked car. As these officers were unable to control CHASRICK, and he was still actively resisting, I drew my department issued Taser and gave loud commands of "TASER." I deployed (2) Taser cartridges at CHASRICK, which were ineffective as I heard a loud disconnect. It was later determined that one of the Taser prongs made contact with CHASRICK while the other prong hit Ofc. Stewart's hand. Ofc. Nocella pulled CHASRICK to the ground and I repositioned myself behind him, giving another loud verbal command of "Taser, Taser." CHASRICK was still actively fighting with Ofc. Nocella, so I deployed a second Taser cartridge into CHASRICK's back area, and heard him scream loudly. Ofc. Nocella able to secure Chasrick into handcuffs.*"[21]

Officer Roscoe further reported, "*As soon as backup arrived and began to control the situation, I felt weak in the knees, extremely dizzy, and was seeing stars, all of which was from being repeatedly struck by HEREDIA. I asked officer to call an ambulance as I felt as though I was going to lose consciousness, and I was seated in a patrol vehicle awaiting the arrival of AMR. I then observed DE LA CRUZ walking about on the sidewalk appearing that he was recording Officers, and continuing his behavior. I feared that in this chaos DE LA CRUZ would get away as I was*

---

[20] Incident/ Investigative Supplemental Report. Agency MPD, Case Number 18-006983, page 3 of 4 and page 4 of 4, dated June 7, 2018, Author Officer Michael Roscoe.
[21] Incident/ Investigative Supplemental Report. Agency MPD, Case Number 18-006983, page 3 of 4 and page 4 of 4, dated June 7, 2018, Author Officer Michael Roscoe.

*previously attempting to place him into custody for assaulting me and walked over to him to place him in handcuffs. I secured handcuffs on his wrists, which were checked for proper fitment and double locked them. As I walked over to the wagon, I observed HEREDIA being held by Ofc. Jaworowski, waiting to be placed into the wagon. HEREDIA showed no remorse for hitting me, and attempted to instigate further, saying "I fucked you up" and "Look at you, cut you open like a bitch." HEREDIA was referring to a small scrape to my forehead, which was most likely received when HEREDIA was punching me in the face."[22]*

Officer Roscoe concluded his report writing, *"AMR later arrived and transported myself and Ofc. Stewart to Elliot Hospital. While in transport, Paramedics started and IV on me due to extremely high blood pressure which was not going down, and I felt extreme pain in my head and neck. At Elliot Hospital, I learned I suffered a concussion, a cervical strain in the neck area, scrapes to my arms and knees, and a small scrape on my forehead. Due these injuries I was out for (1) week to recover."* [23]

## Officer Canada A. Stewart Incident/Investigation Report

Officer Stewart reported that on May 11, 2018, at about 1:01 a.m. she self-assigned herself to a noise complaint to assist Officer Roscoe and Harrington.

Officer Stewart wrote in her report, *"Officer Roscoe and Harrington had originally been sent to this area reference a loud group in front of the club which they cleared from, but were alerted back to the area by the Glowbar bouncers to remove an unwanted group from the club. I heard this call over the radio and attached myself to the call as backup."[24]*

Officer Stewart arrived to find Officer Roscoe and Officer Harrington speaking to Jeff Taylor and Joshua Heredia. Officer Stewart would indicate in her report that as Officer Roscoe was explaining to these patrons that they were no longer wanted at the club by the bouncers and needed to remove themselves from

---

[22] Incident/ Investigative Supplemental Report. Agency MPD, Case Number 18-006983, page 4 of 4 and page 4 of 4, dated June 7, 2018, Author Officer Michael Roscoe.
[23] Incident/ Investigative Supplemental Report. Agency MPD, Case Number 18-006983, page 4 of 4 and page 4 of 4, dated June 7, 2018, Author Officer Michael Roscoe.
[24] Incident/ Investigative Supplemental Report. Agency MPD, Case Number 18-006983, page 1 of 4, dated June 6, 2018, Author Officer Canada A. Stewart.

the premises, the males were arguing that it was because of their race that they were being asked to leave.

Officer Stewart reported that the males agreed to leave but appeared confused as to where they parked and where their friends were. Officer Stewart then wrote, *"Because of their confusion, the males tried to re-enter the establishment to look for their friends. At this point a group of males, identified as Chasrick Heredia, Jose Ortiz De La Cruz and Justin Johnson* (sic) *exited."*[25]

Officer Stewart continued her narrative, *"Chasrick saw officers and immediately pulled out his cellphone and began recording while shouting explicit things. Chasrick's friends then began saying that it is his birthday and telling him to calm down or was, "going to get arrested." As Jose kept pushing Chasrick multiple time in the chest, Chasrick became more and more disruptive and began pushing and shoving Jose. Myself, Ofc. Roscoe, and Ofc. Harrington began giving commands for both Chasrick and Jose to stop pushing each other, but they kept doing it and moved to the middle of the Hanover St. I noted that Hanover St. is a very busy street with two-way traffic and that there was low visibility in the middle of the street."* [26]

Officer Stewart then reported, *"I then took hold of Jose's arm, pulled him back away from Chasrick and told him that he needed to stop fighting and calm down or else he would be arrested. Jose then went to grab onto me, but stopped once I told him I was a police officer."*[27]

Officer Stewart then reported, *"I then looked away from Jose to see Ofc. Roscoe and Ofc. Harrington were attempting to place Chasrick into custody. I noted that Chasrick continued yelling, "don't fucking touch me" and was pulling away from these officers as they were giving verbal commands for Chasrick to stop resisting. Ofc. Roscoe then transitioned Chasrick to the ground and Ofc. Harrington attempted to help gain control of Chasrick's hands once both Ofc. Roscoe and Chasrick were on the ground. I then gained control of Chasrick's legs and feet. Chasrick still continued to resist at this point, as would not turn on his stomach."*[28]

---

[25] Incident/ Investigative Supplemental Report. Agency MPD, Case Number 18-006983, page 2 of 4, dated June 6, 2018, Author Officer Canada A. Stewart.
[26] Incident/ Investigative Supplemental Report. Agency MPD, Case Number 18-006983, page 2 of 4, dated June 6, 2018, Author Officer Canada A. Stewart.
[27] Incident/ Investigative Supplemental Report. Agency MPD, Case Number 18-006983, page 2 of 4, dated June 6, 2018, Author Officer Canada A. Stewart.
[28] Incident/ Investigative Supplemental Report. Agency MPD, Case Number 18-006983, page 2 of 4, dated June 6, 2018, Author Officer Canada A. Stewart.

Officer Stewart continued her observations writing, *"At this point, two males pushed or punched Ofc. Roscoe, who was on top of Chasrick attempting to gain control of his hands to place them in handcuffs, from our left sides with enough force to cause Ofc. Roscoe to redirect his attention. Ofc. Roscoe then stood up and went to push the two males back away from Chasrick and myself. The two males then pushed Ofc. Roscoe back."*[29]

Officer Stewart then wrote, *"During this side altercation, one of the males collided with me, causing me to fall to the ground off of my knees. I then went to get back up on my knees when Chasrick flipped on his back and with both of his feet, kicked me with full force to the center of my chest, causing me to fall back (RSA 631:2 Simple Assault). I noted that I was attempting to call for back up units right as Chasrick kicked my chest. I then jumped back up and on top of Chasrick to attempt to place him into custody, while still giving verbal commands to stop resisting. Chasrick immediately grabbed my hair, which I will note is located in a tight bun at the base of my head, and pulled my head straight to the ground by my hair. I noted that I could not move my head from the ground as he continued to pull it down. As I began shouting to let go of my hair and head, Chasrick began beating and punching the right side of my read repeatedly, while still keeping a tight grip on my hair (RSA 631-2 Second Degree Assault)."*[30]

Officer Stewart continued her description of events, *"At this same time, I attempted to use hard hand tactics and with a closed right fist, administered multiple punches to Chasrick's head. Chasrick remained holding on to my hair during these punches and did not let go until Ofc. Roscoe came to assist me. I noted the Chasrick freed my hair from his grip, my hair was disheveled and out of my hair ties."*[31]

Officer Stewart then reported, *"As I began to stand up, I saw that Joshua had begun fighting with Ofc. Roscoe, taking his attention away from Chasrick. Chasrick looked at me, then noticed he had dropped his phone in the street. Chasrick turned to face away from me as his friends said "run!" and appeared as though he was going to run, but then turned back to reach down and grab his cellphone. I then*

---

[29] Incident/ Investigative Supplemental Report. Agency MPD, Case Number 18-006983, page 2 of 4, dated June 6, 2018, Author Officer Canada A. Stewart.
[30] Incident/ Investigative Supplemental Report. Agency MPD, Case Number 18-006983, page 2 of 4 and 3 of 4, dated June 6, 2018, Author Officer Canada A. Stewart.
[31] Incident/ Investigative Supplemental Report. Agency MPD, Case Number 18-006983, page 3 of 4, dated June 6, 2018, Author Officer Canada A. Stewart.

*reached out to grab Chasrick with both hands to attempt to place him into custody
again. Chasrick then reached out and punched me in the nose with a closed fist,
consequently causing my nose to bleed (RSA 631-2-A Simple Assault).* [32]

Officer Stewart continued, *"As I was grabbing hold of Chasrick attempting to
place him into custody, he pushed me (RSA 631-2-A Simple Assault) which caused
both of us to fall against a vehicle that was parked on the South side of Hanover St.
Chasrick continued to resist, refusing to put his arms behind his back. At this point
back up had arrived and Ofc. Nocella was attempting to place Chasrick into custody
alongside me. An unknown male grabbed on to my right arm as I was holding on to
Chasrick. I shouted to the male to let go of me and continued attempting to place
Chasrick into custody. Ofc. Roscoe then announced that he was going to tase
Chasrick. I turned to face Ofc. Roscoe while still having my left hand on Chasrick's
shoulder. Chasrick continued to resist during the moment the taser prongs were
deployed into Chasrick's back as well as the back of my left hand. Both myself and
Chasrick briefly sustained the effects of the taser at this moment.* [33]

Officer Stewart continued her description of events, *"Chasrick then began to
move away from the car as was tased again by Ofc. Roscoe. Chasrick sustained the
full effects of this second taser deployment and was transitioned to the ground. Ofc.
Nocella attempted to place Chasrick into handcuffs and was giving verbal
commands for Chasrick to remove his right hand from under his body. Chasrick was
not complying to Ofc. Nocella's commands. I then assisted Ofc. Nocella in placing
Chasrick's right hand into handcuffs. The handcuffs were double locked and I
checked for fit and Chasrick was placed into MDD wagon.* [34]

Officer Stewart further wrote, *"At this point, there was still a large crowd of
onlookers, many of who were recording with their cellphones. I approached members
of the original group that were still standing on the street in front of the Glow Bar
and who were continuing to argue with officers. I gave numerous commands for
these males to remove themselves from the premises. I continued stating, "go home"
and then stated, "I am giving you a lawful command to remove yourselves from the
premises" to which they did not comply. I noted that during these moments, a male*

---

[32] Incident/ Investigative Supplemental Report. Agency MPD, Case Number 18-006983,
   page 3 of 4, dated June 6, 2018, Author Officer Canada A. Stewart.
[33] Incident/ Investigative Supplemental Report. Agency MPD, Case Number 18-006983,
   page 3 of 4, dated June 6, 2018, Author Officer Canada A. Stewart.
[34] Incident/ Investigative Supplemental Report. Agency MPD, Case Number 18-006983,
   page 3 of 4, dated June 6, 2018, Author Officer Canada A. Stewart.

*later identified as: Harley Valley (07/31/1995) 12A Auburn St. Londonderry, NH (603) 818-8218 was recording the incident/officers on his cellphone.*[35]

Officer Stewart concluded her report stating, *"While officers continued handling the parties still left on scene, myself and Ofc. Roscoe were seated into patrol car to wait for an ambulance. AMR then arrived on scene and transported us to the Elliot Hospital for evaluation. I suffered a concussion, whiplash, a bloody nose, bruises to my hands, and scratches to my left arm, elbows, and knees. I noted the scratch to my left arm appeared to be from a nail. Injuries sustained during this incident resulted in missed time from work. A use of force report was completed."*[36]

## Officer Nathan P. Harrington Incident/Investigation Report

On May 11, 2018, at approximately 1:01 am Officer Harrington responded with Officer Roscoe to 123 Hanover Street at the Glow Bar for a noise complaint reporting a group of individuals were in front of the bar on the sidewalk and being very loud. Officer Harrington then wrote, *"We arrived on scene and cleared the call, however we stayed in the area and watched the group of males that were being loud outside the establishment. It appeared that they were arguing with the club bouncer. Officer Stewart arrived on scene and we proceeded to approach the males who were being loud and arguing with the bouncer amongst themselves."*[37]

Officer Harrington reported that the bouncer at GLOBAR informed them that he wanted Joshua Heredia and his friends to leave the establishment in order to stop any further problems with him for the night.

Officer Harrington then wrote, *"Joshua never left the front of the Glowbar, and his brother Chasrick Heredia became very aggravated as was additionally refusing to leave the area once he came outside to where we were."*[38]

After repeated commands to leave the area were made Officer Harrington wrote," *At this point Chasrick and Jose Ortiz began to push/shove each other while*

---

[35] Incident/ Investigative Supplemental Report. Agency MPD, Case Number 18-006983, page 3 of 4, dated June 6, 2018, Author Officer Canada A. Stewart.

[36] Incident/ Investigative Supplemental Report. Agency MPD, Case Number 18-006983, page 3 of 4 and page 4 of 4, dated June 6, 2018, Author Officer Canada A. Stewart.

[37] Incident/ Investigative Supplemental Report. Agency MPD, Case Number 18-006983, page 11 of 36, dated May17, 2018, Author Officer Nathan F. Harrington.

[38] Incident/ Investigative Supplemental Report. Agency MPD, Case Number 18-006983, page 11 of 36, dated May17, 2018, Author Officer Nathan F. Harrington.

*disputing whether or not they should leave. Chasrick and all of the parties moved onto the roadway of Hanover Street in front of the GLOWBAR and continued to have a pushing match with one another while acting disorderly. We commanded these individuals to get out of the roadway and back onto the sidewalk. They would not listen to our commands."* [39]

Officer Harrington continued his narrative, writing, *"Chasrick refused to leave and ignored Ofc Roscoes repeated commands to be quiet and leave. Jose Ortiz approached Ofc Roscoe and grabbed him by his key chain on his duty belt. Ofc Roscoe proceeded to shove him away from him and commanded him not to touch him. At this point, Chasrick Heredia took an aggressive step toward Ofc Roscoe while yelling profanity directed at him. At this point Ofc Roscoe informed Chasrick Heredia that he was placing him under arrest and reached for Chasricks arm to place him in handcuffs."* [40] Officer Harrington then wrote, *"At this point, Chasrick began to struggle with Ofc Roscoe. I also witnessed Jose Ortiz, Jeff Taylor and Joshua Heredia grab onto Chasrick Heredia's arms as well as additional subjects and began to try and prevent Ofc Roscoe from making the arrest."* [41]

Officer Harrington continued, *"At this point I stepped in to assist Ofc Roscoe. I grabbed onto the right side of Chasrick and took hold of him. As a result Chasrick tried to spin out of my grasp. Ofc Roscoe and I were able to transition Chasrick to the ground. At this point, Chasrick moved his hands under his body and would not present then to us in order to place him in handcuffs. I could feel his arm muscles flexing and tensing while I was attempting to place him in handcuffs. I gave him multiple verbal commands "STOP RESISTING" to which he ignored. Ofc Stewart was also assisting with placing Chasrick under arrest."*

Officer Harrington then wrote, *"At this point, Joshua Heredia approached Ofc Roscoe and Ofc Stewart and began to kick/punch/pull them while we were on top of Chasrick Heredia attempting to place him in custody. (SEE SUPPLEMENTAL). There was a crowd people including the 5 other Offenders who approached us in a threatening manner. After Ofc Roscoe and Ofc Stewart were struck by Joshua Heredia who was in the crowd, Ofc Roscoe got up and began to defend himself against Joshua Heredia and other males in the crowd who began*

---

[39] Incident/ Investigative Supplemental Report. Agency MPD, Case Number 18-006983, page 11 of 36, dated May17, 2018, Author Officer Nathan F. Harrington.

[40] Incident/ Investigative Supplemental Report. Agency MPD, Case Number 18-006983, page 11 of 36, dated May17, 2018, Author Officer Nathan F. Harrington.

[41] Incident/ Investigative Supplemental Report. Agency MPD, Case Number 18-006983, page 11 of 36, dated May17, 2018, Author Officer Nathan F. Harrington.

*pushing Ofc Roscoe. I looked up I looked up and observed Ofc Roscoe against a group of males and greatly outnumbered so I got up and started to assist Ofc Roscoe against the group of males. I witnessed Joshua Heredia and other unknown males in the crowd assault Ofc Roscoe in the form of what appeared to be punches and shoves and I responded with approaching Joshua Heredia and delivering a open palm hand strike to his face in order to stun him and give us crucial time to try and place him under arrest. (SEE CONNORS SUPPLEMENTAL, TRUDEAU SUPPLEMENTAL, NOCELLA SUPPLEMENTAL). After doing this, the group of makes continued to be increasingly violent towards us and became more physical."* [42]

Officer Harrington went onto write, *"At this point I saw Ofc Stewart being assaulted by two individuals while up against a white car. There were two males who had her pressed up against a white vehicle parked on the road and I could see then cocking their arms back and swinging at her. Ofc Stewart was defending herself and Ofc Roscoe was also engaged in the altercation in the same proximity. I grabbed onto one of the two make the were attacking Ofc Stewart by their shirt collars and pulled then by their collars to the ground. I got on top of the two individuals and then I was struck by what I believe to be a kick to the side of my chest from an unknown male."* [43]

Officer Harrington added to his report, *"Ofc Roscoe and Ofc Stewart were taken to the Elliot Hospital to be evaluated for injuries sustained in the altercation. I did not sustain any injuries. Officer Roscoe sustained a concussion caused by Joshua Heredia punching /kicking him (SEE SUPPLEMENTAL) and Ofc Stewart sustained a concussion as a result of Chasrick Heredia assaulting her (SEE SUPPLEMENTAL).* [44]

Officer Harrington concluded his supplemental report noting, *"Additionally, It* (sic) *was discovered that Erich Stephan who was also arrested during the incident, was video taping the altercation. It is unknown how much of the incident he recorded. His phone was seized by Valley Street Jail CO Brooks and given to the midnight shift wagon (Ofc Colburn and Ofc Charest) and then brought to my custody. I took custody of the phone and entered it into evidence as NH1 PHONE."* [45]

---

[42] Incident/ Investigative Supplemental Report. Agency MPD, Case Number 18-006983, page 11 and page 12 of 36, dated May17, 2018, Author Officer Nathan F. Harrington.
[43] Incident/ Investigative Supplemental Report. Agency MPD, Case Number 18-006983, page 12 of 36, dated May17, 2018, Author Officer Nathan F. Harrington.
[44] Incident/ Investigative Supplemental Report. Agency MPD, Case Number 18-006983, page 12 of 36, dated May17, 2018, Author Officer Nathan F. Harrington.

[45] Incident/ Investigative Supplemental Report. Agency MPD, Case Number 18-006983,

## Officer Matthew T. Nocella Incident/Investigation Report

On May 11, 2018, at approximately 1:05 am Officer Nocella who was assigned to the midnight shift hear a dispatch requesting all available units to respond to the Glowbar located at 123 Hanover Street for an officer in need of assistance.

Officer Nocella arrived on scene and wrote, "*I immediately observed officers being attacked by multiple male suspects along with a massive crowd that was observing the event take place. I sprinted out of my car toward Officer Stewart who was pinned up against a vehicle by a male individual...*"[46] Officer Nocella would later identify this individual as Chasrick Heredia.

Officer Nocella then wrote, "*Officer Stewart was yell at Heredia attempting to free herself from his active physical assault upon her. Officer Stewart's hair is always in a neat bun and at this point in time her hair was completely messed up and she was breathing heavily which appeared to me that she had been in an active physical altercation for a decent amount of time.*"[47]

Officer Nocella continued, "*I ran over and grabbed ahold of Heredia who attempted to push me away. I delivered a knee strike to the area of his chest and yelled "Stop!" Heredia looked at me and smiled menacingly and screamed at the top of his lungs "AHHHHHH!" as he continued to thrash his arms and wrestle with me. It was at this point that I attempted to bring him to the ground. Heredia placed his hands on the ground and attempted to break free of my hold. It was at this point that Officer Roscoe advised me that he was going to tase Heredia and he deployed his department issued taser which had no result.*"[48]

Officer Nocella then wrote, "*It was at this point that I was able to bring Heredia down to the ground. I was yelling for Heredia to stop resisting and to "Give me your hands!" Heredia was still actively resisting attempting to get up from the ground and break free from me. Officer Roscoe then advised me that he was going to*

---

page 12 and page 13 of 36, dated May17, 2018, Author Officer Nathan F. Harrington.
[46] Incident/ Investigative Supplemental Report. Agency MPD, Case Number 18-006983, page 16 of 36, dated May17, 2018, Author Officer Matthew T. Nocella.
[47] Incident/ Investigative Supplemental Report. Agency MPD, Case Number 18-006983, page 16 of 36, dated May17, 2018, Author Officer Matthew T. Nocella.
[48] Incident/ Investigative Supplemental Report. Agency MPD, Case Number 18-006983, page 16 of 36, dated May17, 2018, Author Officer Matthew T. Nocella

*deploy his taser again which he did. I heard Heredia say "Ow!" but I was unsure if it worked being familiar with the effect it was coinciding with the fact that he was still actively resisting me. It was at this point that I was able to pry his left hand from under his body and put it behind his back. I ordered Heredia again to "Stop" and "Give me your hands!" Heredia did not obey my order and I pushed Heredia's head to the ground with my forearm and I screamed "Stop, give me your hands right now!" It was at this point that Heredia started to become compliant saying "Ok!"*[49]

## Officer Richard J. Valenti Jr. Incident/Investigation Report

At about 1:05 am on May 11, 2018, K9 Officer Richard J. Valenti, assigned the midnight shift with his K9 Axel responded to the Glow Bar after Officer Roscoe and Officer Stewart were unable to be reached on the radio. Upon his arrival at 123 Hanover Street, Officer Valenti observed a large crowd of people engaged in fighting with multiple police officers on Hanover Street just east of Chestnut Street.

Officer Valenti wrote the following, "*I deployed K9 Axel to assist and observed Ofc. N. Harrington with two subjects on the ground on Hanover Street and observed Ofc. Nocella who was actively engaging with a combative subject who was wearing an American flag tank top identified as Chasrick Heredia DOB 5/10/1994, 354 Kennard Road, Manchester, NH who Ofc. Roscoe used his taser on as was still actively resisting arrest. The subject continued refusing to place his hand behind his back and was still engaged in trying to get away from Ofc. Nocella's attempts to place him in custody.*" [50]

Officer Valenti then wrote, *I then gave approximately three loud verbal commands to the subject to place his hands behind his back or he would be bitten by the police K9. The subject ultimately complied and was placed into cuffs.*" [51]

## Eyewitness Cell Phone Video Recordings of Incident

On January 10, 2019, 23-year-old Harley Valley came to the New Hampshire Public Defenders office located at 20 Merrimack Street Manchester,

---

[49] Incident/ Investigative Supplemental Report. Agency MPD, Case Number 18-006983, page 16 and page 17 of 36, dated May17, 2018, Author Officer Matthew T. Nocella.

[50] Incident/ Investigative Supplemental Report. Agency MPD, Case Number 18-006983, page 14 of 36, dated May17, 2018, Author Officer Richard J. Valenti Jr.

[51] Incident/ Investigative Supplemental Report. Agency MPD, Case Number 18-006983, page 14 of 36, dated May17, 2018, Author Officer Richard J. Valenti Jr.

New Hampshire to be interviewed regarding his observations and his personal cell phone recording of the May 11, 2018, incident at the GlowBar the night of Chasrick Heredia's arrest.

Mr. William Freyler conducted the interview with Investigator Erin Saxon sitting in.

Mr. Fryer completed a comprehensive report of the interview. During the interview Mr. Freyler wrote in part that Mr. Valley stated that during the evening Chasrick Heredia and his friends had gone outside the bar, so he followed them outside. He recalled 4-8 people standing in the street, including Chasrick Heredia. Mr. Valley recalled police there then told the group of people to get out of the street.

Mr. Valley further recalled telling the group and Chasrick Heredia to listen to the police and get out of the street. Chasrick Heredia was raising his voice and talking back to the police but was not making any physical threats or motions that could be confused at threats. Mr. Valley stated that Chasrick Heredia was holding his cell phone in his right hand and trying to record the police.

Mr. Valley stated that he decided to take his cell phone out and start recording at that point because the police were being overly aggressive, so he decided to record what was going on.

Mr. Valley indicated that as he was filming, Chasrick Heredia continued to talk back to the police, and it seemed like the police were very agitated. At about that time he observed that two officers went after Chasrick and pushed him into a vehicle. Mr. Valley recalled Chasrick still had his cell phone in his right hand when the officers pushed Chasrick into the car before both officers brought Chasrick to the ground.

Mr. Valley said he was trying to film everything the best he could, while still paying attention to his surroundings. Mr. Valley stated that he was viewing the scene through his phone which was recording everything, and that was the most accurate representation he could offer of what he was witnessing.

Mr. Valley recalled losing focus on Chasrick for a moment but was able to put the camera back on Chasrick, who was on the ground at that point.

Mr. Valley stated the next thing he saw was an officer come in literally throwing punches with both of his hands to Chasrick's head. Chasrick was able to get back up for a second as he tried to avoid being punched by the police, but Chasrick was then put in a headlock by a police officer and brought back to the ground again.

Mr. Valley further recalled that once Chasrick was on the ground again the police kept yelling at him to give them his hands, but the police were sitting on top of him and he was pinned to the ground, preventing him from being able to give his arms.

Mr. Valley stated that the police then tazed Chasrick, who began to yell for help. The police then put handcuffs on Chasrick, and he was arrested.

Mr. Valley recalled walking up to the female officer after Chasrick was arrested and asked her for her badge number. Mr. Valley recalled that she refused to give it, but later she did after being advised by another officer that she had to.

Mr. Valley was asked if the female officer had any injuries or blood on her face that he was able to see. Mr. Valley stated he got a good look at the female officer's face and said he saw no blood on her face or any injuries consistent with being assaulted. Mr. Valley said the female officer's hair was disheveled, but there were no injuries he could see on her face or head, and he saw no blood.

Mr. Freyler told Mr. Valley that he had a copy of the video that was posted online and asked Mr. Valley to watch it. Mr. Valley agreed.

Mr. Valley watched the copied video as confirmed it was his video he recorded and posted online at  https://www.youtube.com/watch?v=idZTa1ByPOc . We examined this video and find it to be the same.

We further note that McCourt Video Analysis and Investigations broke Mr. Valley's cell phone video into 12,041 separated .bmp image frames.

Lastly a review of Manchester Police discovery reveal that three videos were secured into evidence reported as:

1.  Cell phone recording RFD 7-MPD 137.mp4
2.  Cell phone recording RFD 7-MPD 138.mp4
3.  Cell phone recording RFD 7-MPD 139.mp4

We note Bates (MPD) numbers 137 is a copy of Mr. Valley's cell phone video that we believe Manchester Police located on Facebook at URL: https://www.facebook.com/harleyxvalley/videos/1970594312960566/.

We find the copy of the incident cell phone video in the possession of Mr. William Freyler, the same video that was identified by Mr. Valley as his video, may be the copy of the incident video we found on YouTube. We believe that the copy of

the cell phone video gathered by the police and placed into police evidence is the same we located on YouTube.

Cell phone recording RFD 7-MPD 138.mp4 and cell phone recording RFD 7-MPD 139.mp4 will be reviewed later in this report.

# Harley Valley Cell Phone Frame by Frame Video Analysis

The title of the recording is 1970594312960566. The video resolution is 720 x 1280. We note Mr. Valley's cell phone video has a total run time of 6:41 seconds, with a frames rate of 30 frames per second. Each frame has a frame rate calculated to be 0.0333... second. A total of 12,042 frames were provided for our analysis.

Utilizing the video frame by frame breakdown provided by McCourt Video Analysis and beginning at image 00001.bmp, we note that during the first 358 frames of the video, or approximate 11.92 seconds of time passed before Chasrick Heredia was first seen in the video wearing an American flag printed on a red tank top holding a cell phone in his right hand. About 544 frames and 18.11 seconds passed before Officer Roscoe and/or Officer Harrington first appeared at frame 00545. Chasrick Heredia first appears in the video at frame 00359 or about 6.06 seconds before Officers Roscoe, and Harrington, come into view.

Officer Stewart does not first appear in the video until frame 01141, or about 19.98 seconds after Officer Roscoe and Harrington confront and arrest Chasrick Heredia.

## Frame Count with Description Review

Each frame of the cell phone video 1970594312960566 is identified first by frame number and then activity description at Chart 1 below.

| Frame | Activity Description |
|-------|---------------------|
| 00001 | Chasrick Heredia, Officer Roscoe, Officer Harrington, and Officer Stewart not in frame at start of video. |
| 00359 | Chasrick Heredia's presence first detected in video. |
| 00392 | Chasrick Heredia holding cell phone in right hand. |
| 00424 | Chasrick Heredia holding cell phone up in right hand. |
| 00441 | Chasrick Heredia holding cell phone up in right hand. |
| 00545 | Officer Roscoe reaching out and grabbing Chasrick Heredia's right arm. |
| 00696 | Officer Roscoe and Harrington locking up Chasrick Heredia's right arms and beginning to spin him to the roadway. |

| 00722 | Officer Roscoe forcing Chasrick Heredia's against black vehicle via locked left arm. |
|---|---|
| 00757 | Chasrick Heredia holding cell phone in right hand while his back is up against black car. |
| 00821 | Officer Roscoe and Harrington forcing Chasrick Heredia's back up against black vehicle. |
| 00949 | Officer Roscoe and Harrington throwing Chasrick Heredia down onto roadway. |
| 01078 | Chasrick Heredia on his back on roadway being held down by Officer Roscoe and Harrington. |
| 01135 | Chasrick Heredia on his back holding cell phone while being held down being held down by Officer Roscoe and/or Officer Harrington. |
| 01141 | Chasrick Heredia on his back holding cell phone while being held down by Officer Roscoe and/or Officer Harrington. Officer Stewart is now seen in the video for the first time on Chasrick Heredia's extended lower legs. |
| 01200 | Officer Roscoe begins to leave Officer Harrington to engage another person with Officer Stewart still holding Chasrick's legs down with her knee and arms. |
| 01212 | Officer Roscoe leaves Officer Harrington and Officer Stewart to engage another person. |
| 01268 | Officer Roscoe pulls another male he has engaged down on top of Officer Stewart |
| 01297 | Chasrick Heredia is on his back holding his cell phone and is engaged by Officer Stewart. |
| 01331 | Chasrick Heredia is on his back holding his cell phone pinned down by Officer Harrington as Officer Stewart was pressing against his feet with her upper torso. |
| 01384 | Officer Stewart recovers and gets on top of Chasrick Heredia as Officer Harrington starts to get back up to feet. |
| 01433 | Chasrick Heredia is on his back with Officer Stewart on top. Chasrick Heredia briefly held Officer Stewart's hair bun. |
| 01497 | Officer Stewart is still on top of Chasrick Heredia as Officer Harrington moves away. Officer Stewart is now out of the frame. |
| 01707 | Officer Roscoe reappears in frame on top of Chasrick Heredia and is beginning to deliver multiple left and right closed fist punches at Chasrick Heredia's head. |
| 01711 | Officer Roscoe continues a rapid succession aggressive left and right closed fist punches toward Chasrick Heredia's head and body. |
| 01723 | Officer Stewart is back in frame seen lying on her back with both of her arms raised above her head at the elbow while Officer Roscoe is seen delivering additional right and left closed fist blows toward Chasrick Heredia's and Officer Stewart's face. |

| 01768 | Chasrick Heredia can be seen holding his black cell phone while on his knees covering his face with his left arm from Officer Roscoe's hard right and left closed fist punches. |
| 01769 | Officer Stewart's face is in view as her hands are now outreached toward Chasrick Heredia's head. Officer Roscoe reaching out to Chasrick Heredia's head area as well. |
| 01782 | Officer Stewart's is reaching out with her right hand as Officer Roscoe delivers another closed fist left swing at Chasrick Heredia's head and/or face, as well as Officer Stewart's face. |
| 01788 | Officer Stewart is now standing up. |
| 01856 | Officer Roscoe is pulled off Chasrick Heredia by bystanders in the crowd. |
| 01901 | Officer Stewart reengages Chasrick Heredia. |
| 01942 | Officer Stewart appears to be calling on her portable radio. |
| 01943 | Chasrick Heredia has gotten to his feet and his cell phone seen lying in the road. |
| 01961 | Chasrick Heredia is on his feet and is reaching down to recover his now dropped cell phone. Officer Stewart is closing on his position. |
| 01979 | Chasrick Heredia's dropped cell phone is seen on the roadway under Officer Stewart's footwear |
| 01995 | Officer Stewart is back on her feet and reengages Chasrick Heredia. Dropped Cell phone location unknown. |
| 02058 | Officer Stewart with Officer Nocella coming into frame, pin Chasrick Heredia upright to the side of a white car. |
| 02165 | Officer Stewart's hair is noted as disheveled. |
| 02390 | Officer Nocella comes into frame and forces Chasrick Heredia down to the road surface away from the white parked car. |
| 03034 | Chasrick Heredia appears to be sitting up detained by other officers with Officer Roscoe seen in the background with his taser out with deployed taser wires seen on the roadway. |
| 03519 | Chasrick Heredia in on his stomach in the process of being handcuffed. |
| 04211 | Chasrick Heredia is in custody being led away with deployed taser wires on the roadway nearby. |
| 04834 | Officer Stewart's face is recorded close-up with disheveled hair. No visible signs of injury to her face are seen. |
| 04937 | Officer Stewart person and face continue to be recorded close-up. No visible signs of injury to her face from new view angle. |
| 05314 | Officer Stewart continues to be recorded close-up. No visible signs of injury to her face from new view angle. |
| 06955 | Officer Stewart is again recorded from a distance with no obvious signs of distress or injury. |

| 07108 | Officer Stewart recorded close-up apparently speaking to Mr. Valley. No visible signs of injury to her face from new view angle. |
| 07808 | The right side of Officer Stewart's face is in close-up and illuminated. No visible signs of injury to her face from new lighting source and view angle. |
| 12040 | Video Record Ends |

Chart 1

Utilizing Chart 1 we begin our frame time of recorded event examination of Mr. Valley's cell phone video of the arrest of Chasrick Heredia.

- Beginning about 11.95 seconds into the video, at frame 00359, Chasrick Heredia is first detected. At frame 00392, or about 1.09 seconds later, Chasrick Heredia is seen holding a cell phone in his right hand.

- At frame 00393 to frame 00424, or about 65 frames and 2.16 seconds later, Chasrick Heredia is still holding his cell phone in his right hand.

- At frame 00424 to frame 00441, or about 17 frames and about .56 second later, Chasrick Heredia is still holding his cell phone in his right hand.

- At frame 00441 to frame 00545, or 104 frames and 3.46 seconds later, Officer Roscoe can now be seen for the first time reaching out for Chasrick Heredia's right arm. It is reasonable to conclude that Officer Roscoe's movements, beginning at Frame 00545, denote the beginning of Officer Roscoe's recorded actions to arrest Chasrick Heredia.

- From frame 00545 to frame 00949, both Officer Roscoe and Harrington grabbed and attempted to take Chasrick Heredia to the asphalt roadway. These observations covered 404 frames, covering about 13.45 seconds of time to accomplish.

- From Frame 00949 to frame 01135, Chasrick Heredia is seen on his back in the roadway being held down by at Officer Roscoe and/or Officer Harrington. This event covered 186 frames, taking about 6.19

seconds to complete. We note at frame 01135 Chasrick Heredia still appears to still be holding his cellphone in his right hand.

- From the inception of Officer Roscoe and Officer Harrington's first physical contact with Chasrick Heredia, at frame 00545, to where Officer Roscoe and Officer Harrington's had Chasrick Heredia pinned down on the roadway, at frame 01135, which covered 590 frames and approximately 19.64 seconds to complete.

- Officer Stewart is first seen in the video at frame 01141, just 6 frames and .19 second later, assisting Officer Roscoe and Harrington to effect the arrest of Chasrick Heredia by pinning Chasrick Heredia's legs down to the roadway.

- At frame 00141 to frame 01212, or 71 frames and about 2.3 seconds later, Officer Roscoe leaves Officer Harrington to engage another person in the crowd.

- At frame 01212 to frame 01268, or 56 frame and about 1.86 seconds later, Officer Roscoe pulls another male he has engaged down on top of Officer Stewart.

- At frame 01268 to frame 01297, for 29 frames and 1.86 seconds later, Chasrick Heredia is on his back holding his cell phone in his right hand and is engaged by Officer Stewart who is now falling backward.

- At frame 01297 to frame 01331, or 34 frames and about 1.13 seconds later, Chasrick Heredia is seen on his back on the roadway holding his cell phone in his right hand while still pinned down by Officer Harrington and Stewart, who has recovered her position. Chasrick Heredia is seen using his feet as leverage to get back up on his feet.

- At frame 01331 to frame 01384, or 53 frames and about 1.76 seconds later, Officer Stewart recovers and gets on top of Chasrick Heredia as Officer Harrington starts to get back on his feet.

- At frame 01384 to frame 01433, for 49 frames and 1.63 seconds later, Chasrick Heredia is on his back and grabs Officer Stewart's hair bun.

- At frame 01433 to frame1497, or 64 frames and about 2.13 seconds later, Officer Stewart is still on top of Chasrick Heredia as Officer Harrington moves away. Officer Stewart then goes out of the frame.

- At frame 1497 to frame 01707, or 214 frames and 6.99 seconds later, Officer Roscoe begins a rapid series of aggressive left and right closed fist punches toward Chasrick Heredia's head and body.

- At frame 01707 to frame 01711, or 4 frames and 0.13 second later, Officer Roscoe continues his rapid succession of aggressive left and right closed fist punches toward Chasrick Heredia's head and body.

- At frame 01711 to frame 01723, or 12 frames and about .39 second later, Officer Stewart is back in frame seen lying on her back with both of her arms raised above her head at the elbow while Officer Roscoe is seen delivering right and left closed fist blows toward Chasrick Heredia's and Officer Stewart's face.

- At frame 01723 to frame 01769, or 46 frames and about 1.53 seconds later, Officer Stewart's face is in view as her hands are now outreached toward Chasrick Heredia's head. Officer Roscoe reaching out to Chasrick Heredia's head area as well.

- At frame 01769 to frame 01782, or 13 frames and about .43 second later, Officer Stewart's is reaching out with her right hand as Officer Roscoe delivers another closed fist left swing at Chasrick Heredia's head and/or face, as well as Officer Stewart's face.

- At frame 01782 to frame 01788, or 6 frames and .19 second later, Officer Stewart in now standing up.

- At frame 01788 to frame 01856, or 68 frames and about 2.26 seconds later, Officer Roscoe is pulled off Chasrick Heredia by bystanders in the crowd.

- At frame 01856 to frame 01901, or 45 frames and about 1.49 seconds later, Officer Stewart reengages Chasrick Heredia.

- At frame 01901 to frame 01942, or 41 frames and about 1.36 seconds later, Officer Stewart appears to be calling for backup on her portable radio.

- At frame 01942 to frame 01948, or 6 frames and about .19 second later, Chasrick Heredia has gotten to his feet and does not appear to have his cell phone in his right hand.

- At frame 01948 to frame 01961, or 13 frames and .43 second later, Officer Stewart in now standing up.

- At frame 01979 to frame 01987. Or 8 frames and .26 second later Chasrick Heredia's dropped cell phone is visible lying in the roadway under Officer Stewart's footwear.

- At frame 01961 to frame 01995, or 34 frames and about 1.13 seconds later, Officer Stewart is back on her feet and reengages Chasrick Heredia.

- At frame 01995 to frame 02058, or 63 frames and about 2.09 seconds later, Officer Stewart with Officer Nocella coming into frame, pin Chasrick Heredia upright to the side of a white car.

- At frame 02058 to frame 02165, or 107 frames and about 3.56 seconds later, Officer Stewart's hair is noted as disheveled.

- At frame 02165 to frame 02390, or 225 frames and about 7.49 seconds later, Officer Nocella forces Chasrick Heredia down to the road surface away from the white parked car.

- At frame 02390 to frame 03034, or 644 frames and about 21.44 seconds later, Chasrick Heredia appears to be sitting up detained by other officers with Officer Roscoe seen in the background with his taser out with deployed taser wires seen on the roadway.

- At frame 03034 to frame 03519, or 485 frames and about 16.15 seconds later, Chasrick Heredia in on his stomach in the process of being handcuffed.

- At frame 03519 to frame 04211, or 692 frames and about 23.04 seconds later, Chasrick Heredia is in custody being led away with deployed taser wires on the roadway nearby.

- At frame at frame 04211 to frame 04834, or 623 frames and about 20.74 seconds later, Officer Stewart's face is recorded close-up with disheveled hair. No visible signs of injury to her face are seen.

- At frame 04834 to frame 04937, or 103 frames and about 3.42 seconds later, Officer Stewart person and face continue to be recorded close-up. No visible signs of injury to her face from new view angle.

- At frame 04937 to frame 05314, or 377 frames and about 12.55 seconds later, Officer Stewart continues to be recorded close-up. No visible signs of injury to her face from new view angle.

- At frame 05314 to frame 06955, or 1,641 frames and about 54.64 seconds later, Officer Stewart is again recorded from a distance with no obvious signs of distress or injury.

- At frame 06955 t0 frame 07108, or 153 frames and about 5.09 seconds later, Officer Stewart recorded close-up apparently speaking to Mr. Valley. No visible signs of injury to her face from new view angle.

- At frame 7108 to frame 07808, or 700 frames and about 23.31 seconds later, the right side of Officer Stewart's face is in close-up and illuminated. No visible signs of injury to her face from new lighting source and view angle.

- At frame 07808 to frame 12041, or 4,593 frames and about 152.94 seconds (2 minutes 32 seconds) later, Mr. Valley's cell phone recording ends.

# Additional Cellphone Review and Frame by Frame Analysis

Several additional cell phone videos of the incident were provided for our review as part of the state's discovery. One of these cell phone recording is entitled: *RFD 7-MPD 138.mp4.* Codec information reports that the video was recorded at a resolution of 720x1280, with a frame rate of 30. The video is 16 seconds long. This video was not broken down into frame-by-frame components and will be reviewed and reported in time increments at Chart 2 below.

| Time | Activity Description |
|------|----------------------|
| 00:01 | Officer Roscoe is seen kneeling over attempting to take Jose De La Cruz into custody. |
| 00:08 | Officer Roscoe reportedly drops his handcuffs, abandons the arrest of Jose De La Cruz and rushes to Officer Stewart position. Harley Valley (blue shirt) is recording both officers and Chasrick Heredia. |
| 00:08 | Officer Roscoe is seen delivering at least two left then right full swing closed fist blows into the area where Chasrick Heredia and Officer Stewart heads are located, with by both Chasrick Heredia and Officer Stewart lying on the road surface with each lying on their side and/or back. |
| 00:16 | Video record ends. |

Chart 2

Another cell phone video of the incident was provided for our review in discovery. It is entitled: *RFD 7-MPD139.mp4.* Codec information reports that the video was recorded at a resolution of 1920x1080, with a frame rate of 30.019324. The video is 17 seconds long.

This video was not broken down into frame-by-frame components and will be reviewed and reported in time increments at Chart 3 below.

| Time | Activity Description |
|------|----------------------|
| 00:00 | Officer Roscoe is standing in the center of the roadway facing Officer Stewart. No obvious visible injuries noted. |
| 00:01 | Officer Roscoe is same position bent at the waist with hands on knees. No obvious visible injuries noted. |
| 00:06 | Officer Stewart Standing with a right-side profile. No visible injuries note to right side of face. Hair is disheveled. |
| 00:13 | Officer Roscoe moves to new position bent at the waist with hands on knees. No obvious visible injuries noted. |
| 00:18 | Officer Roscoe in same position standing with left hand to bridge of nose No obvious visible injuries noted. |

Chart 3

# Ambulance / Medical / Injury Report Review

## Chasrick Heredia

We were not provided any documentation in discovery that Chasrick Heredia's was ever treated for the injuries he sustained during his arrest.

We were provided with 16 post-arrest photographs of Chasrick Heredia taken at the at Hillsborough County House of Correction in Manchester, New Hampshire on May 15, 2018, or about four days after Chasrick Heredia's arrest.

We find no officers report and/or medical report that addresses the removal of taser probes from Chasrick Heredia's back after he was tased twice by Officer Roscoe. The tow taser probe contact/penetration points into Chasrick Heredia's lower back are evident in the provided color photographs.

## Officer Michael Roscoe

AMR Ambulance was dispatched to the incident at about 1:28 a.m. and arrived on scene at 1:30 a.m. Officer Roscoe was examined by the ambulance personnel and a pre-hospital care report was generated. Officer Roscoe's reported chief complaint to the ambulance personnel was dizziness. The cause of the injury was listed as possible assault and battery.

The ambulance report narrative included, *"PT has an abrasion to his forehead, but no other facial injuries noted[52]."*

The 6 photographs[53] of Officer Roscoe's injuries reportedly taken at the Manchester Police Station at some point after Officer Roscoe was released from the hospital show one abrasion to Officer Roscoe's forehead, which is consistent with the ambulance report. Also photographed was one abrasion to Officer Roscoe's left elbow, as well as minor abrasions to both of Officer Roscoe's knees. Officer Roscoe was cleared to return to work without restrictions on May 18, 2018.

## Officer Canada Stewart

AMR Ambulance was dispatched to the incident at about 1:28 a.m. and arrived on scene at 1:30 a.m. Officer Stewart was examined by the ambulance personnel and a pre-hospital care report was generated. Officer Stewart's reported chief complaint to the ambulance personnel was a headache. The cause of the injury was listed as possible assault and battery.

The ambulance report narrative included, *"PT has no obvious facial injuries."*[54] This ambulance report is consistent with the lack of any facial injuries to Officer Stewart found in any of the provided cell phone videos.

From our review of the provided ambulance and Elliott Health System Complete Chart data Officer Stewart was found to have *"Erythematous and TTP at right zygoma and right temple."*[55] , or superficial reddening of the skin on the right cheek and temple area. Officer Stewart was found to have tenderness to her knees and right hand.

No photographs of Officer Stewart's noted superficial reddening of the skin to her right cheek and temple area were provided in discovery for our review.

Officer Stewart was discharged the same morning at 4:37 a.m. and was cleared to return to full duty two days later.

---

[52] Elliot Hospital Encounter-Level Scanned Documents- 05/11/2018 page 27 Bated number MPD 190.
[53] Initial disclosure Documents MPD 158-163, unknown date, unknown author.
[54] Elliot Health Systems Complete Chart Encounter-Level Scanned Documents - 05/11/2018: (continued), dated May 11, 2018, at 12:36 a.m.
[55] Elliot Health Systems Complete Chart Encounter-Level Scanned Documents - 05/11/2018: (continued), dated May 11, 2018, at 12:36 a.m.

# Michael J. Roscoe and Canada A. Stewart Relationship

As a consequence of the incident outside the GlowBar on May 11, 2018, Chasrick Heredia was charged with attempted murder, first degree assault, second degree assault, riot, resisting arrest and related misdemeanors.

A Superior Court jury trial in this case started on February 5, 2019. The trial ended on February 7, 2019. The jury returned verdicts on February 8, 2019.

The jury found Chasrick Heredia not guilty of attempted murder, first degree assault and second-degree assault. Chasrick Heredia was found guilty of (felony) riot, resisting arrest (felony: serious bodily injury), disorderly conduct, and related misdemeanors.

On February 8, 2019, Chasrick Heredia trial lawyer/defense counsel became aware that Officer Roscoe and Officer Stewart may have been invovled in a romantic relationship well prior to and during the incident at the GlowBar on May 11, 2018.

On February 15, 2019, Chasrick Heredia's Defense Counsel assigned New Hampshire Public Defender Investigator Will Freyler to investigate the matter.

Mr. Freyler reported that he looked at Facebook postings and found a Facebook page for both Officer Roscoe, and Officer Stewart that demonstrated Officer Roscoe and Officer Stewart had an ongoing intimate relationship as boyfriend and girlfriend.

Officer Roscoe's Facebook page used the name Mike James. The profile image of an American bald eagle was changed on February 9, 2019, at 6:56 a.m. This change occurred the day after Chasrick Heredia's verdicts were made public.

Numerous photographs of Officer Roscoe and Stewart together as a couple were found dating back to September 10, 2017. It was clear Officer Roscoe and Officer Stewart were dating.

Officer Stewart's Facebook page used the name Maple Leaf. Officer Stewart's Facebook profile picture too was changed on February 9, 2019, at 6:45 a.m., or about 11 minutes before Officer Roscoe changed his profile.

Officer Stewart had photographs of her and Officer Roscoe together dating back to September 6, 2017, with a man named Pete Boylan commenting on one such photograph, *"Good looking couple!*[56]

Mr. Freyler discovered the oldest indication he found regarding the beginning of Officer Roscoe and Officer Stewart relationship was a post from November 9, 2016. In the comment section Officer Roscoe wrote about being photoshopped into the picture with Officer Stewart. Officer Stewart replied to Officer Roscoe message saying if he had gone to the game, she would not have had to photoshop him in.

Due to Mr. Freyler's extensive investigation work on this assignment, he was able to positively identify Michael J. Roscoe and Canada A. Stewart as the couple he saw on Facebook.

Michael J. Roscoe and Canada A. Stewart's undisclosed personal relationship generated a request by defense counsel to vacate the jury's guilty finding and request a new trial.

After review, the trial judge found clear and credible evidence that Michael J. Roscoe and Canada A. Stewart's were in a committed relationship as boyfriend and girlfriend at the time Chasrick Heredia's arrest. The trial judge further stated that it was clear that this relationship continued though the pendency of the entire case and trial.

As the state failed to inform Chasrick Heredia's counsel of the relationship between Michael J. Roscoe and Canada A. Stewart's to Chasrick Heredia defense counsel the defense counsel's motion for a new trial was granted.

## Deposition Testimony Review

### Officer Michael Roscoe

Officer Roscoe was deposed on June 7, 2022.

Officer Roscoe began his career as a police officer at age 23 with the Manchester Police Department on March 17, 2016, successfully attending the 170th New Hampshire Police Academy.

---

[56] Memorandum to Julian Jefferson from Will Freyler, dated February 15, 2019.

During the approximate 28 months preceding the incident at the Glowbar under review, Officer Roscoe received his fulltime officer certification, completed police academy and in-service training regarding the proper use of force, and received training on the use of his department issued taser.

Officer Roscoe was assigned to the midnight shift on May 11, 2018. He recalled being on-scene at the GlowBar for about 2 minutes before Chasrick Heredia, along with 6-8 others exited the Glowbar.

Officer Roscoe recalled Chasrick Heredia was heard being loud and boisterous, walking in the street swearing at one of his friends while pushing him.

Officer Roscoe decided to arrest Chasrick Heredia and shortly thereafter Officer Roscoe used an armbar takedown to transition Chasrick Heredia to the roadway surface.

The on-scene situation had now deteriorated to the point where every officer was independently involved in a separate arrest effort with members of the crowd.

Officer Roscoe, now 6-7 feet from Officer Stewart testified, *"I looked over and I observed Chasrick's back. He was laying on his right side and Officer Stewart was perpendicular to his body and from that angle I could see, like, triceps area and elbow over her back with a tight grip on the bun of her hair and then I could see Chasrick's right fist moving in the area of Officer Stewart's head and I could see her head moving back and forth and to the left, to the left from her."*[57]

Officer Roscoe was then asked by counsel, *"So Chasrick, you said, is on the ground on his side."* Officer Roscoe replied, *"Yes, like, if he were to lay on his back and roll ever so slightly to his right side."* [58]

Counsel then asked, *"Okay. So his left hand was up then and that's the one that you said grabbed her bun?"* Officer Roscoe replied, *"His left hand was over Officer Stewart's shoulder, and then in, like, a 90-degree angle across her back and his left hand was holding the bun of her hair* (indicating.)*"* [59]

Counsel then inquired, *"And you observed him doing the punching with his right hand?"* To which Officer Roscoe Replied, *"Yes."* [60]

---

[57] Officer Roscoe Deposition Page 121, Lines 1 through 9.
[58] Officer Roscoe Deposition Page 121, Lines 12 through 13.
[59] Officer Roscoe Deposition Page 121, Lines 14 through 19.
[60] Officer Roscoe Deposition Page 121, Lines 20 through 22

Counsel continues his questioning, *"So it was only Officer Stewart then that was with Chasrick at the time?"* Officer Roscoe stated, *"Yes."* [61]

Counsel then asks, *"Okay. So you return and you go to Chasrick. What did you do when you got to Chasrick?"* Officer Roscoe then stated, *"I started with hard hand techniques."* [62]

Counsel asks, *"What does that mean?"* Officer Roscoe replies, *"I was delivering strikes to Chasrick's head area with closed fists."* [63]

Counsel further inquiries, *"Where did you strike Chasrick with your fists?"* Officer Roscoe responded, *"As soon as I arrived, I positioned my lower body between Officer Stewart and Chasrick's head. I delivered one strike with my left hand over the top, I made contact with Chasrick's face which had a desired effect as it stunned him a little bit and he used the weight holding onto Officer Stewart to sit up."* [64]

Counsel then asked, *"So when you came back to Chasrick, if I understand correctly, if you put yourself between Officer Stewart and Chasrick, that places Officer Stewart to your left, right?"* Officer Roscoe answered, *"Correct."* [65]

Counsel then asked, *"Okay. And you used your left hand to strike Chasrick?"* Officer Roscoe answered, *"Who is positioned to my right."* [66]

Counsel then asked, *"So at that point Chasrick sits up. What happens then?"* Officer Roscoe testified, *"I then transition myself on my knees and swung to the right to an area where I was directly behind Chasrick."* [67]

Counsel then inquires, *"And what type of force did you use at that point?"* Officer Roscoe then stated, *"Well, I observed that Chasrick was still holding onto Officer Stewart's hair and she was still screaming so I continued the hard hand*

[61] Officer Roscoe Deposition Page 122, Lines 5 through 7.
[62] Officer Roscoe Deposition Page 122, Lines 8 through 11.
[63] Officer Roscoe Deposition Page 122, Lines 12 through 14.
[64] Officer Roscoe Deposition Page 122, Lines 15 through 23.
[65] Officer Roscoe Deposition Page 123, Lines 1 through 5.
[66] Officer Roscoe Deposition Page 123, Lines 6 through 7.
[67] Officer Roscoe Deposition Page 123, Lines 13 through 17.

*techniques in the same manner on either side of Chasrick's head area in attempts to get him to let go of Officer Stewart.*"[68]

Counsel then inquired, "*Okay. And did he ultimately let go*? Officer Roscoe stated, "*Yes, he ultimately did, as a result of those techniques.*"[69]

Counsel then asked, "*Were you able to arrest him at that point*? Officer Roscoe replied, "No."[70]

Counsel inquired, "*What happened next then?* Officer Roscoe replied, "*So initially -- I'm sorry. Immediately, as I observed that Chasrick let go of Officer Stewart's hair, I reached underneath his armpit area, overhand grip on both of his wrists in a manner of what they call a fireman's carry almost, and from there, I was attempting to use leverage to pull his arms behind his back as he sat there.*"[71]

Counsel then asks, "*Was that successful?*" Officer Roscoe replied, "*No, it wasn't.*"[72]

Counsel then inquired, "*What did you do next*?" Officer Roscoe replied, "*As I reached down and my palms of my hand made contact with Chasrick's wrists, I then felt something hit me in the side of the head that kind of knocked me off balance.*"[73]

Counsel queried, "*What was that*? Officer Roscoe replied, "*Chasrick's brother Joshua Heredia had come over and punched me in the side of the head.*"[74]

Counsel then asked, "*Okay. What happened with Chasrick at that point*?" Officer Roscoe answered, "*I don't know for certain.*"[75]

Counsel then asked, "Did you at any time attempt to use your Taser on Chasrick? Officer Roscoe replied, "Yes."[76]

---

[68] Officer Roscoe Deposition Page 123, Lines 18 through 23. Page 124, Line 1through 2.

[69] Officer Roscoe Deposition Page 124, Lines 3 through 5.
[70] Officer Roscoe Deposition Page 124, Lines 6 through 7.
[71] Officer Roscoe Deposition Page 124, Lines 8 through 15.
[72] Officer Roscoe Deposition Page 124, Lines 16 through 17.
[73] Officer Roscoe Deposition Page 124, Lines 18 through 22.
[74] Officer Roscoe Deposition Page 124, Lines 23 through Page 125, Line 2.
[75] Officer Roscoe Deposition Page 125, Lines 3 through 5.
[76] Officer Roscoe Deposition Page 125, Lines 6 through 8.

Counsel then inquired, "*When was that*? Officer Roscoe replied, "*After Joshua Heredia had assaulted me he continued to attempt to punch me, and another officer, another arriving officer that was uninvolved in this entire thing had just gotten there and he was able to save me and tackle Joshua Heredia to the ground. Following that, Joshua Heredia let me back up. While this is all going on, because of the fact that I was unable to grab him, Chasrick continued to resist by standing up and attempting to run away.*"[77]

Counsel then asked, "*So is that the point where you attempted to use your Taser?*" Officer Roscoe replied, "*No, not at that point.*"[78]

Counsel further inquired, "*So what happened when Chasrick attempted to get away*? Officer Roscoe replied, "*Another officer, a fifth responding officer arrived and assisted Officer Stewart in stopping Chasrick as he stopped to try to pick up his cell phone which he dropped when he began to run away.*"[79]

Counsel then asked, "*Who was that officer*? Officer Roscoe replied, "*Officer Nocella.*"[80]

Counsel then asked, "*What happened when he attempted to pick up his cell phone?* "Officer Roscoe answered, "*I believe Officer Stewart grabbed onto Chasrick and that is when Officer Nocella was just about to be within an arm's length of the two.*"[81]

Counsel then inquired, "*Okay. And did they successfully take Chasrick into custody at that point?*" Officer Roscoe replied, "*No, they didn't.*"[82]

Counsel inquired, "*What happened?* Officer Roscoe answered, "*Chasrick continued to resist and the two of them, the two officers attempted to restrain him in a similar manner and they ended up at the driver's side rear wheel area of that same car that we previously talked about and there was an officer on either side attempting to pull Chasrick's arms behind his back to arrest him.*"[83]

---

[77] Officer Roscoe Deposition Page 125, Lines 9 through 19.
[78] Officer Roscoe Deposition Page 125, Lines 20 through 22.
[79] Officer Roscoe Deposition Page 125, Lines 23 through Page 126, Line 10.
[80] Officer Roscoe Deposition Page 126, Lines 7 through 8.
[81] Officer Roscoe Deposition Page 126, Lines 9 through 13.
[82] Officer Roscoe Deposition Page 126, Lines 14 through 16.
[83] Officer Roscoe Deposition Page 126, Lines 17 through Page 127, Line 1.

Counsel asked, "*What position was Chasrick in at that point?* Officer Roscoe answered, "*Chasrick was standing.*"[84]

Counsel then asked, "*With each officer holding an arm*? Officer Roscoe answered,
"*Correc*t."[85]

Counsel inquired, "*Was his back to the car?*" Officer Roscoe answered, "*Yes, it was.*"[86]

Counsel asked, "*What about the two officers, how were they positioned?* Officer Roscoe replied, "*They were on either side, kind of facing each other with Chasrick in the middle.*"[87]

Counsel asked, "*From there what happened?* Officer Roscoe answered, "*Once the officer that came to assist me, once that officer was able to put Joshua Heredia in handcuffs, I stood up and saw that Chasrick was still actively resisting arrest.*"[88]

Counsel made further inquiry, "*And is that when you decided to use your Taser?*" Officer Roscoe answered, "*Yes. I drew my Taser and made announcements that, of, Taser, Taser.*"[89]

Counsel then asked, "*Did you deploy it?* Officer Roscoe stated, "*Yes, only after I observed that the active resisting was still going on despite those.*"[90]

Counsel asked, "*Was he on the ground at that point?* Officer Roscoe answered, "*No.*"[91]

Counsel then inquired, "*Was he still standing up by the car?*" Officer Roscoe stated, "Yes."[92]

---

[84] Officer Roscoe Deposition Page 127, Lines 2 through 4.
[85] Officer Roscoe Deposition Page 127, Lines 5 through 6.
[86] Officer Roscoe Deposition Page 127, Lines 7 through 8.
[87] Officer Roscoe Deposition Page 127, Lines 9 through 12.
[88] Officer Roscoe Deposition Page 127, Lines 13 through 17.
[89] Officer Roscoe Deposition Page 127, Lines 18 through 21.
[90] Officer Roscoe Deposition Page 127, Lines 22 through Page 128 Line 1.
[91] Officer Roscoe Deposition Page 128, Lines 2 through 3.
[92] Officer Roscoe Deposition Page 128, Lines 4 through 5.

Counsel asked, "*Being held by the two officers*? Officer Roscoe replied, "*Correct.*"[93]

Counsel then asked," "Where did you -- where was he hit with your Taser?" Officer Roscoe replied, "*I don't know for certain.*"[94]

Counsel then asked, "*Are you the one that removed the prongs from him or did somebody else?*" Officer Roscoe replied, "*No. I was in the hospital.*"[95]

## Officer Nathan Harrington

Officer Harrington was deposed via Zoom on June 30, 2022, by Attorney Stephen Martin. Also present for the state was Attorney Charles P. Bauer.

From our initial review of Officer Harrington testimony, he began his career as a police officer at age 23 with the Manchester Police Department on March 17, 2016.

Officer Harrington attended an in-house academy at Manchester Police Department before attending the 173rd 16-week full time session of the New Hampshire Police Academy, graduating on or about May 2, 2016.

During the approximate 24 months preceding the incident at the Glowbar, Officer Harrington testified that he has completed numerous in-service training classes regarding the use of force. Officer Harrington also completed classroom and hands-on training and certification regarding the use of his department issued taser.

Officer Harrington was assigned to the midnight shift on May 11, 2018, and Officer Harrington responded to a noise complaint.

The deposition consists of Attorney Stephen Martin asking questions (Q) and Officer Nathan Harrington answering (A).

The questioning begins at page 72.

---

[93] Officer Roscoe Deposition Page 128, Lines 6 through 7.
[94] Officer Roscoe Deposition Page 128, Lines 8 through 10.
[95] Officer Roscoe Deposition Page 128, Lines 11 through 13.

Q *"First of all, who made the call, to the best of your recollection"?*
A *"I don't remember. Someone in the area."*[96]

Q *"What was the call for service about"?*
A *"It was for a noise complaint at Glow Bar. It was people in the front of the bar being loud."*[97]

Q *"Were you the first one to arrive at the Glow Bar"?*
A *"I don't remember who arrived first. I know myself and Officer Roscoe were sent there."*[98]

Q *"Were you aware at that time that they were in that relationship?"*
A *"Yes, I believe so."*

Q *"When you arrived, as far as other officers go, do you remember who was there?*
A *"It was myself, Officer Roscoe, and Officer Stewart arrived afterwards, I believe."*[99]

Q *"So upon your arrival it was just you and Officer Roscoe?"*
A *"I believe so."*[100]

Q *"When you arrived can you describe what you observed was happening?*
A *"There was a group of males in the front, arguing with the bouncer."*[101]

Q *"Do you recall why you didn't stop when you first saw them, like why you went around before you stopped?"*
A *"I don't know if I immediately noticed that they were arguing with the bouncer. Again, you know, it's intoxicated people outside of a bar, being loud. It's not exactly the most, you know, unusual thing, but I do remember parking down the street and being in my cruiser for a period of time monitoring and I was kind of under the impression that they would eventually just leave and that would be the end of it."*[102]

---

[96] Officer Harrington deposition Page 72, Lines 16 through 18.
[97] Officer Harrington deposition Page 72, Lines 19 through 20.
[98] Officer Harrington deposition Page 73, Lines 6 through 9.
[99] Officer Harrington Deposition Page 74, Lines 1 through 4.
[100] Officer Harrington Deposition Page 74, Lines 5 through 7.
[101] Officer Harrington Deposition Page 74, Lines 11 through 14.
[102] Officer Harrington Deposition Page 75 and 76, Lines 11 through 14 and lines 1 through 3.

Q *"How long would you say you were sitting there, observing before you decided to go back?"*
A *"I don't recall how long exactly. I know Officer Roscoe had gone to approach the males. He was parked closer to Glow Bar at that point so that's when I went over to assist him."*[103]

Q *"So you walked over to where Officer Roscoe is. What did you do when you got over there?"*
A *"At that point in time we were trying to help facilitate, you know, whatever was going on, first trying to figure out what was happening and then trying to, you know, mediate the situation and have everyone just go their separate ways."*[104]

Q *"Was that successful?"*
A *"No."*[105]

Q *"What happened?"*
A *"So I remember I briefly spoke to the bouncer who told me he wanted Joshua Heredia and those individuals just to leave the area for the night. He didn't want any further problems so we were trying to, you know, help facilitate that. At that point in time, sometime during that time that's when Chasrick came out of the bar."*[106]

Q *"What happened when Chasrick came out of the bar?"*
A *"He was immediately pretty uncooperative and argumentative towards us."*[107]

Q *"How was he uncooperative?"*
A *"I just remember him refusing to leave, yelling, shouting, he was pushing his friends that were trying to get him to leave as well."*[108]

Q *"Did you say anything to him at that point?"*
A *"Yeah. We kept repeatedly asking him just to leave the area and keep his voice down. He ended up going out in the roadway and kept trying to get back on the sidewalk and out of the roadway just to go home."*[109]

---

[103] Officer Harrington Deposition Page 77, Lines 8 through 13.
[104] Officer Harrington Deposition Page 79 and 80, Lines 21 through 23 and lines 1 through 4.
[105] Officer Harrington Deposition Page 80, Lines 5 through 6.
[106] Officer Harrington Deposition Page 80, Lines 7 through 14.
[107] Officer Harrington Deposition Page 80, Lines 19 through 22.
[108] Officer Harrington Deposition Page 80 and 81, Line 23 and Lines 1 through 3.
[109] Officer Harrington Deposition Page 81, Lines 4 through 9.

Q *"So how many times you would say that Chasrick went into the roadway?*
A *"I'm not certain. He spent a fair amount of time in the roadway. He had gone back up onto the sidewalk and would go back out into the road. I don't remember how long though or how many times."*[110]

Q *"At some point did somebody tell him that he was under arrest?"*
A *"Yes. After repeated commands, Officer Roscoe informed Chasrick that he was under arrest."*[111]

Q *"To the best of your recollection, what was the reasoning for Officer Roscoe placing Chasrick under arrest?*
A" Okay. *Disorderly conduct would be my interpretation."*[112]

Q *"What was Chasrick doing that constituted disorderly conduct based on your observations?*
A *"Based on my observations, again, I wasn't the one who tried to place him under arrest, but based on my observations, I think it was probably several different subsections of that statute, engaging, you know, in tumultuous behavior in a public place, causing a breach of the peace, being in the roadway, refusing to leave the roadway, you know, ignoring all of our commands for all of those. I think probable cause existed for any of those."*[113]

Q *"At some point did you attempt to assist Officer Roscoe with the arrest?"*
A *"I did, yes."*[114]

Q *"When did you do that?"*
A *"Once I saw Officer Roscoe tried to place him under arrest he pulled himself away from Officer Roscoe. They were up against the car and I went in to help out. He had spun his body, his positioning away from me, and continued to resist."*[115]

Q *"So when you first initially went over to assist Officer Roscoe to arrest Chasrick, what type of force did you use at that point?*
A *"What do you mean?" Can you just ask the question again. I'm sorry."* [116]

Q *"So what type of force did you use to try to assist Officer Roscoe with arresting Chasrick?"*
A *"During the whole course or at that point?"* [117]

---

[110] Officer Harrington Deposition Page 82, Lines 13 through 18.
[111] Officer Harrington Deposition Page 82, Lines 19 through 22.
[112] Officer Harrington Deposition Page 82, & page 83, Line 23 & Lines 1 through 10.
[113] Officer Harrington Deposition Page 83, Line2s 11through 10.
[114] Officer Harrington Deposition Page 85, Lines 9 through 14.
[115] Officer Harrington Deposition Page 85, Lines 9 through 14.
[116] Officer Harrington Deposition Page 85, Lines 15 through 23. Page 86, Line 1.
[117] Officer Harrington Deposition Page 85, Lines 15 through 23. Page 86, Line 1.

Q *"At that point."*
A *"At that point, soft hand techniques."* [118]

Q *"And what did that consist of?"*
A *"Of holding onto his arm and trying to and to maneuver it behind his back."* [119]

Q *"And while you were doing that where was Officer Roscoe?"*
A *"He was beside me."* [120]

Q *"Was he doing the same thing or something else?"*
A *"I can't speak to what other people were doing, all I know is what I was doing."* [121]

Q *"So you didn't observe what Officer Roscoe was doing?"*
A "Not at that time, no." [122]

Q *"Were there -- besides you and Officer Roscoe, was there anyone else at that moment in time, anyone else assisting you with Chasrick?"*
A *"I don't believe so at that time."* [123]

Q *"When you were assisting Officer Roscoe at that moment in time were you able to get control over Chasrick?"*
A *"No."* [124]

Q *"So what happened then?"*
A *"He was eventually transitioned to the ground."* [125]

Q *Did you do that or did Officer Roscoe do that?*
A *That was probably mainly Officer Roscoe. I tried to assist, but that was mainly -- Officer Roscoe was successful in getting him to the ground I believe."* [126]

Q *"How did you assist him?"*
A *"I was attempting -- I believe I was attempting to do an arm bar takedown and he was able to use a different technique that worked."* [127]

---

[118] Officer Harrington Deposition Page 85, Lines 15 through 23. Page 86, Line 1.
[119] Officer Harrington Deposition Page 86, Lines 2 through 4.
[120] Officer Harrington Deposition Page 86, Lines 5 through 7.
[121] Officer Harrington Deposition Page 86, Lines 8 through 11.
[122] Officer Harrington Deposition Page 86, Lines 12 through 14.
[123] Officer Harrington Deposition Page 86, Lines 15 through 18.
[124] Officer Harrington Deposition Page 86, Lines 19 through 22.
[125] Officer Harrington Deposition Page 86, Lines 23 through page 86 through line 2.
[126] Officer Harrington Deposition Page 86, Lines 3 through 8.
[127] Officer Harrington Deposition Page 86, Lines 9 through 12.

Q *Did you observe what technique that was?*
A *I don't remember what it's called.*[128]

Q *"Can you describe it. What did he do?"*
A *"He was able to wrap his arms and pull him down."*[129]

Q *"Did he wrap his arms from behind Chasrick, from in front of him?*[130]
A *"I don't remember."*[131]

Q *"You said you performed an arm bar technique."*
A *"I was attempting to, but it didn't work, I don't think."*[132]

Q *"Can you describe an arm bar?"*
A *"It's when you try to hold onto someone's lower arm with one of your hands and then you just have your other hand a little bit higher up on the back of their shoulder, upper arm area, to kind of immobilize that arm and kind of get more -- I'm trying to think of the right word, trying to basically put yourself more in an advantage position using your weight to kind of lower their body with their arm being kind of immobilized to get them to go to the ground."*[133]

Q *"And I think you said you were unsuccessful doing that."*
A *"Yeah."*[134]

Q *How so? What happened?*
A *"Well, Officer Roscoe was able to take him to the ground."*[135]

Q *"And then when Chasrick was on the ground were you still there at that point?"*
A *"Yes."*[136]

Q *"What did you do at that point?"*
A *"I was trying to get him to roll himself onto his stomach to get his arms placed behind his back."*[137]

---

[128] Officer Harrington Deposition Page 86, Lines 13 through 14.
[129] Officer Harrington Deposition Page 86, Lines 15 through 17.
[130] Officer Harrington Deposition Page 86, Lines 18 through 20.
[131] Officer Harrington Deposition Page 86, Lines 18 through 19.
[132] Officer Harrington Deposition Page 86, Lines 20 through 23. Page 88 Line 1.
[133] Officer Harrington Deposition Page 88, Lines 2 through 12.
[134] Officer Harrington Deposition Page 88, Lines 13 through 15.
[135] Officer Harrington Deposition Page 88, Lines 16 through 18.
[136] Officer Harrington Deposition Page 88, Lines 19 through 21.
[137] Officer Harrington Deposition Page 88, Lines 22 through 23. Page 89 Lines 1 through 2.

Q *"How did you do that?"*
A *"What do you mean?"*[138]

Q *"Well, you said you were trying to roll him onto his stomach to get his hands behind his back."*
A *"Yes."*[139]

Q *"How did you try to get him to roll over?"*
A *"With my hands, I suppose."*[140]

Q *"So not just verbal commands, you were actually making physical contact with him?"*
A *"Yes."*[141]

Q *"Do you remember where you grabbed him to turn him?"*
A *"It was upper body, probably one of his shoulder areas."*[142]

Q *"And was Officer Roscoe still there with you at the time?"*
A *"Yes, I believe so."*[143]

Q *"Had any other officers come to assist?"*
A *"Officer Stewart was with us at this point in time."*[144]

Q *"What was she doing?"*
A *"She was down in his legs area, trying to control his legs."*[145]

Q *"So was she holding onto his legs?"*
A *"I don't know what she was doing. I know she was down in his legs area, trying to gain control."*[146]

Q *"Were you able to roll Chasrick over?"*
A *"No."*[147]

---

[138] Officer Harrington Deposition Page 89, Lines 3 through 4.
[139] Officer Harrington Deposition Page 89, Lines 5 through 7.
[140] Officer Harrington Deposition Page 89, Lines 8 through 9.
[141] Officer Harrington Deposition Page 89, Lines 10 through 12.
[142] Officer Harrington Deposition Page 89, Lines 13 through 16.
[143] Officer Harrington Deposition Page 89, Lines 17 through 19.
[144] Officer Harrington Deposition Page 89, Lines 20 through 22.
[145] Officer Harrington Deposition Page 89, Lines 23. Page 90, Line 1 through 2.
[146] Officer Harrington Deposition Page 90, Lines 3 through 6.
[147] Officer Harrington Deposition Page 90, Lines 7 through 8.

Q *"What happened?"*
A *"I think he ended up on his side at that point in time. He was pretty actively thrashing his body around, pulling his arms away from my grasp, very hard to try to get any sort of control over him and then members of the crowd began to assault us at that time so we got distracted."*[148]

Q *"At the point that he was on his side and thrashing around, who was with you, Officer Stewart and Officer Roscoe?"*
A *"I believe so."*[149]

Q *"And then what happened next?"*
A *"I remember Officer Roscoe was assaulted. He had ended up getting off of Chasrick because we had a large crowd containing, you know, some violent individuals towards us that were now in extremely close proximity to our workspace, and that, obviously, creates a massive officer safety issue when you have, you know, an uncooperative*
*crowd that's angry towards you and has members that are, you know, assaulting you while you're on the ground. You have to try to, one, you're already focusing all your attention on, you know, the person who is on the ground, who is actively resisting, and now you have an entire other layer of, you know, safety concerns of people and, you*
*know, what they could potentially do to you while you're not paying attention. So Officer Roscoe was trying to hold the crowd back. At that point in time I was struck, like, chest, head area. I don't remember. I ended up looking up and seeing, I believe, Joshua Heredia amongst the crowd and I got up to deal with him and at that point in time it was just Canada and Chasrick on the ground."*[150]

Q *"So when you say you were struck, you were struck by somebody, you were not struck by Chasrick?"*
A *"At that time I don't think so."*[151]

Q *"Okay. And you're reference to Canada, that's Officer Stewart?"*
A *"Yes. Sorry about that. Yes."*[152]

Q *"Okay. So at some point then did you turn your attention back to Chasrick?"*
A *"When I was holding, I think it was Joshua back and some other individuals, I had turned back and that's when I had seen Canada again."*[153]

---

[148] Officer Harrington Deposition Page 90, Lines 9 through 15.
[149] Officer Harrington Deposition Page 90, Lines 16 through 19.
[150] Officer Harrington Deposition Page 89, Lines 20 through lines 23. Page 91, Line 1 through 21.
[151] Officer Harrington Deposition Page 91, Lines 22 through lines 23. Page 92, Line 1 through 2.
[152] Officer Harrington Deposition Page 92, Lines 3 through lines 5.
[153] Officer Harrington Deposition Page 92, Lines 6 through lines 10.

Q *"So you turned back and you saw her. What did you do at that point?"*
A *"Well, at that point in time I saw Chasrick holding onto her bun in the back of her head. I saw Officer Roscoe and a couple of individuals were coming up from behind Officer Roscoe and I believe that they were assaulting him. At that point in time I looped around and grabbed those guys and I transitioned them to the ground. I ended up dealing with other individuals at that point in time going forward."*[154]

Q *"So had you at any point returned to Chasrick?"*
A *"No."*[155]

Q *"Did you make any other observations about what Chasrick and Officer Stewart were doing or what happened after you left Chasrick?"*
A *"I don't remember."*[156]

Q *"With respect to Chasrick, you said, grabbing her bun, how long would you say he was holding onto it for?"*
A *"I don't know. I couldn't tell you."*[157]

Q *"Did you see his hand holding onto it or was your observation based on something else?"*
A *"That's how I remember it."* [158]

Q *"That's how you remember it, you saw his hand on her bun?"*
A *"Yes, that's how I remember it, yes."*[159]

Q *"Any other observations about Chasrick and Officer Stewart that you can think of?"*
A *"Not that I can think of."*[160]

Q Did you have any further involvement with Chasrick after that point?
A No, I don't believe so. [161]

Q *"Do you recall whether or not you deployed your Taser that evening?"*
A *"I did not."*[162]

---

[154] Officer Harrington Deposition Page 92, Lines 11 through lines 21.
[155] Officer Harrington Deposition Page 92, Lines 22 through lines 23. Page 93, Line 1 through 21.
[156] Officer Harrington Deposition Page 93, Lines 2 through lines 5.
[157] Officer Harrington Deposition Page 93, Lines 6 through lines 9.
[158] Officer Harrington Deposition Page 93, Lines 10 through lines 12.
[159] Officer Harrington Deposition Page 93, Lines 13 through lines 15.
[160] Officer Harrington Deposition Page 93, Lines 16 through lines 18.
[161] Officer Harrington Deposition Page 93, Lines 19 through lines 21.
[162] Officer Harrington Deposition Page 93, Lines 22 through lines 23. Page 94, Line 1.

Q *"Did you have any involvement in removing the Taser prongs from Chasrick?"*
A *"No."*[163]

Q *"I understand you weren't working booking that night, but were you present while Chasrick was being booked that morning?"*
A *"While he was being booked, no."*[164]

Q *"So between the time that you first encountered Chasrick and the time that you stopped having any sort of interaction with him that we just talked about, about how much time would you say elapsed?"*
A *"I don't know. It was pretty quick. There was probably a couple of minutes beforehand of us trying to just get him to leave and not have any sort of police action come from this so that was probably a couple of minutes, I'd say, but the actual, like, once trying to place him under arrest and then everything else happening, it was very quick."* [165]

Q *"Less than a couple of minutes, would you say"?*
A *"I couldn't tell you. I'd say probably --I don't know."*[166]

Q *"Okay."*
A *"I'd say it was probably less than that, yeah."*[167]

Q *"During the course of your interaction with Chasrick, did you ever use any closed fist strikes on him that you can recall?"*
A *"On Chasrick, I don't believe so, I didn't use any closed fist strikes, no."*[168]

Q *"So are you aware that Officer Stewart and Officer Roscoe were in an intimate relationship at the time of this incident?"*
A *"Yes."*[169]

# Manchester Police Department Standard Operating Procedure Review

## Authority, Law Enforcement Role

---

[163] Officer Harrington Deposition Page 94, Lines 2 through lines 4.
[164] Officer Harrington Deposition Page 94, Lines 5 through 8.
[165] Officer Harrington Deposition Page 94, Lines 9 through 21.
[166] Officer Harrington Deposition Page 94, Lines 22 through 23. Page 95, Lines1 through 2.
[167] Officer Harrington Deposition Page 95, Lines 3 through 5.
[168] Officer Harrington Deposition Page 95, Lines 6 through 10.
[169] Officer Harrington Deposition Page 100, Lines 13 through 15.

A review of the beginning of the **Manchester Police Department Standard Operation Procedure**, subsection, **Authority, Law Enforcement Role**, under Roman IV is entitled: **CODE OF ETHICS.**

A preamble before section IV begins reads, "*All employees shall abide by the code of ethics described below.*"[170]

The Manchester Police Department current Code of Ethics Standard Operating Procedure (SOP) is further broken down to sworn and non-sworn personnel. We will address sworn personnel only beginning at section A, entitled Sworn Personnel. The entire

## IV. CODE OF ETHICS

### A. Sworn Personnel

"*As a law enforcement officer, my fundamental duty is to serve mankind; to safeguard lives and property; to protect the innocent against deception, the weak against oppression or intimidation, and the peaceful against violence and disorder; and to respect the Constitutional rights of all men to liberty, equality, and justice.*

*I will keep my private life unsullied as an example to all, maintain courageous calm in the face of danger, scorn, or ridicule; develop self-restraint; and to be constantly mindful of welfare of others. Honest in thought and deed in both my personal and official life. I will be exemplary in obeying the laws of the land and in the regulations of my department. Whatever I see or hear of a confidential nature of whatever is confided in me in my official capacity will be kept ever secret unless revelation is necessary in the performance of my duty.*

*I will never act officiously or permit personal feelings, prejudices, animosities, or friendships to influence my decisions. With no compromise for crime and with relentless prosecution of criminals, I will enforce the law courageously and appropriately without fear or favor malice, or ill will, never employing unnecessary force or violence and never accepting gratuities.*

*I recognize the badge of my office as a symbol of public faith, and I accept it as a public trust to be held so long as I am true to the ethics of the police service. I will constantly*

---

*strive to achieve those objectives and ideals, dedicating myself before God to my chosen profession- law enforcement."* [171]

We will examine this code in more detail later in this report.

The next section in the Manchester Police SOP we will examine can be found at section VII, Use of Force.

## VII. USE OF FORCE

A. *The use of force by police officers is an issue of great concern to society, individual officers, and police administrators. All too often cries of police brutality are heard throughout the country and it has become more difficult for an officer to effectively do his/her job without fear of some form of reprisal. This is particularly true in making a determinative on the proprietary use of force. It often occurs after the fact and is subjective in nature. No unnecessary or unreasonable force or means of restraint may be used detaining or arresting any person (RSA 594: 4). Officers may use only the minimum amount of force necessary to accomplish lawful objectives. The lawful use of force must be controlled and confined so that an officer will not subject himself/herself to civil and criminal liability. The procedures that follow provide specific standards to guide the department in field situations.*

B. *All officers shall be issued copies of and instructed in the laws regarding the use of force as well as the Standard Operating Procedures pertaining to "Authority, Law Enforcement Role" prior to being authorized to carry any weapons. The issuance and instruction shall be documented.* [172]

C. *All sworn members of the department will, on an annual basis, complete training in the use of force, which will specifically deal with but not limited to Chapter 627 of the New Hampshire RSA Justification, 627:5 Physical Force in law enforcement. Policies and procedures of the department reference to the use*

---

[171] Manchester Police Department Standard Operating Procedure. Authority, Law Enforcement Role, Effective Date July 2017
BATES MPD 090
[172] Manchester Police Department Standard Operating Procedure Authority, Law Enforcement Role. Effective Date July 2017 BATES MPD 093.

*of non-deadly and deadly force and the use of lethal and less lethal weapons will also be addressed. The use of neck restraints is not authorized.* [173]

D. *Non-deadly Force*

*Non-deadly force shall mean tht degree of force, which under circumstances is neither likely nor intended to cause serious bodily harm. It shall be the policy of the department that an officer is justified in using non- deadly force upon another person:*

*1. When and to the extent that the officer reasonably believes it necessary to effect an arrest or detention.*

*2. To prevent the escape from custody of an arrested or detained person unless the officer knows the arrest or detention is illegal.*

*3. To defend himself/herself or a third person from what the officer reasonably believes is the imminent use of less lethal force encountered while attempting to affect such an arrest or detention while seeking to prevent such an escape. (Imminent is defined as having the same meaning as immediate).* [174]

The next section in the Manchester Police SOP's we will examine can be found at section VI, Discretion.

## VI. DISCRETION

A. *Sworn personnel of the Manchester Police Department should remain mindful at all times that the authority vested in their badge be tempered with discretion. The application of discretion, where it is appropriate, does not reflect a weak or ineffective officer. Rather, discretion comes of the intelligent and mature officer who is aware that his/her actions can reach far beyond the moment and can irrevocably affect lives and liberties. Police response to any situation can involve rational, legal and moral alternatives, which are in the best interest of the community and society.*

---

[173] Manchester Police Department Standard Operating Procedure. Authority, Law Enforcement Role Effective Date July 2017 BATES MPD 093 and 094.
[174] Manchester Police Department Standard Operating Procedure. Authority, Law Enforcement Role Effective Date July 2017 BATES MPD 094.

B.   *The following suggests areas where officers may consider discretion as an alternative measure of response:*

  1.  *The enforcement of laws (i.e., the issuance of a warning in lieu of a summons, the issuance of a summons in lieu of an arrest, etc.)*

  2.  *The use of force*

  3.  *Prosecution and plea bargaining*

  4.  *The resolution of conflict or disputes*

C.   *There are many areas where strict enforcement is best alternative response, as well as those areas where application of discretion is limited or eliminated by virtue of Statute, City Ordinance, Court Order, Rules and Regulations of the Manchester Police department or by lawful order other superior officer. Offices are directed to use discretion consistent with the philosophy, goals and objectives of the department, and in keeping with the degree of fairness expected by the ordinary, reasonable, and prudent member of the community.[175]*

The next section in the Manchester Police SOP's we will examine can be found at section VII, Use of non-deadly force / less lethal weapons.

## VII.   USE OF NON-DEADLY FORCE / LESS LETHAL WEAPONS

A.   *Officers of the Manchester Police department are issued or have at their disposal various weapons, such as Taser X2 and OC, which are generally recognized to be less lethal under normal use. Each of these articles is listed in the chapter that follows, and officers shall be familiar with their authorized and intended use as less lethal weapons. Officers shall also be aware that less lethal weapons may in fact inflict death or serious injury bodily injury under certain conditions or circumstances.[176]*

---

[175] Manchester Police Department Standard Operating Procedure. Authority, Law Enforcement Role Effective Date July 2017 BATES MPD 092.
[176] Manchester Police Department Standard Operating Procedure. Authority, Law Enforcement Role Effective Date July 2017 BATES MPD 094 and 095.

# C.L. Forensic Solutions, LLC Incident Analysis

## Professional Conduct Review

We will first examine Officer Roscoe and Officer Stewart's relationship and its impact on the incident under review.

On May 11, 2018, when this incident occurred Officer Michael Roscoe and Officer Canada Stewart's were in an intimate relationship as sworn Manchester Police Officers. Because of their involvement Chasrick Heredia was arrested and faced multiple charges, to include:

1. RSA 631:2 Attempted Murder (A Felony)
2. RSA 631:2 Second Degree Assault (B Felony)
3. RSA 644:1 Riot (B Felony)
4. RSA 642:2 Resisting Arrest or Detention (B Felony)
5. RSA 642:2 Resisting Arrest or Detention (A Misdemeanor)
6. RSA 631:2-A Simple Assault on Police Officer Count 1 (A Misdemeanor)
7. RSA 631:2-A Simple Assault on Police Officer Count 2 (A Misdemeanor)
8. RSA 644:2 Disorderly Conduct (A Misdemeanor)

After a jury trial finding of not guilty were found on the attempted murder charge, and all other assault related charges. Moreover, all subsequent convictions were vacated, and a new trial ordered solely because the State failed to disclose Officer Roscoe and Officer Stewart's continued intimate relationship before, during and after Chasrick Heredia's arrest, to include the pendency of the superior court trial.

We will now examine Officer Stewart's role in setting the stage for Chasrick Heredia's excessive force claims.

## Officer Stewart

Officer Stewart has yet to be deposed. We rely on her written incident report and will supplement this report once her deposition has been completed.

Officer Stewart reported that on May 11, 2018, at about 1:01 a.m. she self-assigned herself to a noise complaint to assist Officer Roscoe and Harrington.

Officer Stewart wrote in her report, *"Officer Roscoe and Harrington had originally been sent to this area reference a loud group in front of the club which they cleared from, but were alerted back to the area by the Glowbar bouncers to remove an unwanted group from the club. I heard this call over the radio and*

*attached myself to the call as backup."*[177] We find it reasonable to conclude Officer Stewart wrote her report after speaking with and/or reviewing other involved officer(s) reports.

We find it more than happenstance Officer Stewart decided to leave her assigned area of responsibility and self-assign herself to a simple noise complaint, with two capable officers already on scene. It was not the nature of the call that drew Officer Stewart to volunteer. Rather, we find it was the fact Officer Roscoe- Officer Stewart's boyfriend, was one of the assigned officers.

We note that no requests for backup were ever made by Officer Roscoe, or Officer Harrington, or Officer Stewart as the noise complaint began to quickly deteriorate into an angry crowd. K9 Officer Richard J. Valenti, would respond to the call only because neither Officer Roscoe nor Officer Stewart could be reached on the radio.

We find Officer Stewart's presence played a key role in Officer Roscoe's excessive use of force against Chasrick Heredia.

**Officer Roscoe**

As the crowd became more confrontational Officer Roscoe's attention became more divided. Not only did Officer Roscoe have to deal with the unruly crowd but Canada's personal safety as well.

We believe this divided attention caused by Canada's presence not only changed the dynamics of Officer Roscoe's conduct as he delt with a disorderly and growing crowd, but compromised Officer Roscoe's ability to follow department SOP's regarding discretion, which is reiterated below:

*Sworn personnel of the Manchester Police Department should remain mindful at all times that the authority vested in their badge be tempered with discretion. The application of discretion, where it is appropriate, does not reflect a weak or ineffective officer.* <u>*Rather, discretion comes of the intelligent and mature officer who is aware that his/her actions can reach far beyond the moment and can irrevocably affect lives and liberties. Police response to any situation can involve rational, legal and moral alternatives, which are in the best interest of the community and society*</u> [Emphasis Added]<u>.</u>

---

[177] Incident/ Investigative Supplemental Report. Agency MPD, Case Number 18-006983, page 1 of 4, dated June 6, 2018, Author Officer Canada A. Stewart.

We note section D. 8. And E. below:

D. *The following suggests areas where officers may consider discretion as an alternative measure of response:*

    5. <u>*The resolution of conflict or disputes*</u> [Emphasis Added]

E. *There are many areas where strict enforcement is best alternative response, as well as those areas where application of discretion is limited or eliminated by virtue of Statute, City Ordinance, Court Order, Rules and Regulations of the Manchester Police department or by lawful order other superior officer.* <u>*Offices are directed to use discretion consistent with the philosophy, goals and objectives of the department, and in keeping with the degree of fairness expected by the ordinary, reasonable, and prudent member of the community*</u> [Emphasis Added].[178]

We also note, more importantly, that when Officer Stewart was straddling Chasrick Heredia and was she calling for help, Officer Roscoe commenced a personal retaliatory assault on Chasrick Heredia constituting second degree assault while acting under the color of law, but a complete disregard for department Standard Operations Procedures regarding use of force and an abject failure in the use of non-lethal force / less lethal weapons.

It is evident from the provided discovery that Canada Stewart's mere presence at this call compromised Officer Roscoe's ability to follow department SOP, remain focused on the call and make strategic decisions in a timely manner regarding not only officer safety, but public safety as well. Instead, Officer Roscoe's decisions caused injuries to not only himself, but to Officer Stewart and Chasrick Heredia.

Despite limited experience as a police officer, Officer Roscoe well knew that the brunt of the people he was speaking that had exited the GlowBar had been inside celebrating Chasrick Heredia's birthday. And moreover, that all the loud and boisterous subjects he was repeatedly ordering to leave the area or be arrested were, to include Chasrick Heredia, highly intoxicated.

---

[178] Manchester Police Department Standard Operating Procedure. Authority, Law Enforcement Role Effective Date July 2017 BATES MPD 092.

Officer Roscoe briefly attempted to control the growing loud and boisterous crowd around him with police presence, followed up with repeated verbal commands to leave the area or be arrested.

Officer Roscoe made no effort to deescalate the growing crowd's anger and simply ignore Chasrick Heredia's repeated inflammatory comments, and insults, all occurring in front of Officer Stewart, which more likely than not angered and/or insulted Officer Roscoe. We note that Officer Roscoe's growing but short-lived resentment of Chasrick Heredia came to a climax just as Chasrick Heredia, still insulting Officer Roscoe, took out his cell phone and began recording Officer Roscoe, all within Officer Stewart purview.

Officer Roscoe, as witnessed and recorded by Harley Valley, without notice to Officer Harrington or Officer Stewart, abandoned all efforts to follow his department SOP. Officer Roscoe instead told Chasrick Heredia that he was under arrest. Without a chance to surrender to the arrest Officer Roscoe reached into the crowd and physically pulled Chasrick Heredia out of the crowd and attempted to take Chasrick Heredia into full custody.

We have not been made aware of other circumstances at the scene that justified Officer Roscoe to violate departments SOP and take such draconian measures in front of a developing mob. However, we do find Officer Roscoe's girlfriend- Canada Stewart's mere presence not only compounded but compromised Officer Roscoe's decision-making process; setting the stage what occurred next.

After Officer Roscoe pulled Chasrick Heredia away from his companions Officer Roscoe immediately spun Chasrick Heredia into a nearby parked sedan, and with Officer Harrington's assistance, Chasrick Heredia was thrown to the roadway.

Officer Stewart entered the struggle by pinning Chasrick Heredia's legs as Officer Roscoe and Officer Harrington continued their efforts to get Chasrick Heredia handcuffed.

Within seconds both Officer Roscoe and Officer Harrington were then reportedly assaulted by others in the gathered mob, with Officer Roscoe being the first to report being assaulted and leaving Officer Harrington and Officer Stewart to attempt to arrest Chasrick Heredia as Officer Roscoe attempted to arrest Jose De La Cruz. Officer Harrington and Officer Stewart continued with their combined efforts to take Chasrick Heredia into custody.

Officer Harrington was then reportedly assaulted by Joshua Heredia and with that left Officer Stewart by herself to continue her efforts to place Chasrick Heredia into custody.

We find it reasonable to conclude that Officer Roscoe's report of hearing "<u>stress</u>" in Officer Stewart's cries for help offer a unique perspective into Officer Roscoe's imminent concern for his girlfriend's wellbeing.

We note that Officer Roscoe was so taken back by seeing his girlfriend getting punched and yelling for help, that Officer Roscoe forgot his training, department SOP, that he not only abandoned his arrest of Jose De La Cruz, but Officer Roscoe left his handcuffs behind, presumably leaving them lying in the road next to Jose De La Cruz for anyone to take control of and use as a weapon or restraint.

We find the reported multiple punches to Officer Stewart that she stated she received to her face, like what Officer Roscoe's report observing, were found to be wholly inconsistent with the reported physical evidence reported by the hospital. Officer Stewart received only superficial redness on the right side of her face and temple.

We note that Officer Roscoe wrote in his incident report on June 7, 2018," *While doing this, I heard Ofc. Stewart scream "Let go of me" and "Don't!" repeatedly, an knew they were still fighting with CHASRICK on the ground. I called for all units to respond to assist us on my portable radio, and removed my handcuffs to place on DE LA CRUZ's wrists. As I was doing this, I again heard Ofc. Stewart yell loudly, and could hear the stress in her voice. **<u>Upon looking over, I observed that she was on top of CHASRICK, perpendicular to his body. CHASRICK was holding Ofc. Stewart by her hair with his left hand and was repeatedly punching her in the face with his right hand, which I saw connecting with her face at least 2 times</u>** [Emphasis Added]."*[179]

However, during Officer Roscoe's deposition June 7, 2022, 4 years to the day later, Officer Roscoe, testified differently regarding Chasrick Heredia assault on Officer Stewart, Officer Roscoe was asked, *"Did you see what she* (Officer Stewart) *was screaming about?"* Officer Roscoe replied, *"Yes I did."*  Officer Roscoe was then asked, *"What did you see?"* Officer Rosco answered, *"I looked over and I observed Chasrick's back. He was laying on his right side and Officer Stewart was*

---

[179] Incident/ Investigative Supplemental Report. Agency MPD, Case Number 18-006983, page 3 of 4, dated June 7, 2018, Author Officer Michael Roscoe.

*perpendicular to his body and from that angle I could see, like, triceps area and elbow over her back with a tight grip on the bun of her hair and then **I could see Chasrick's right fist moving in the area of Officer Stewart's head and I could see her head moving back and forth and to the left, to the left from her** [Emphasis Added]."*[180] In essence Officer Roscoe did not witness Officer Stewart get repeatedly punched in the face by Chasrick Heredia's right hand.

Consequently, a critical observation that Officer Roscoe is using to justify pinning Chasrick Heredia to the road surface on his back and then delivering a salvo of closed fist punches to Chasrick Heredia face lacks credibility.

Counsel further inquired, *"Where did you strike Chasrick with your fists?"* Officer Roscoe responded, *"As soon as I arrived, I positioned my lower body between Officer Stewart and Chasrick's head. I delivered one strike with my left hand over the top, I made contact with Chasrick's face <u>which had a desired effect as it stunned him a little bit and he used the weight holding onto Officer Stewart to sit up</u>* [Emphasis Added]." [181]

We find the reason Officer Roscoe unleashed hits that stunned Chasrick Heredia were personal retribution for punches Officer Roscoe perceived as Officer Steward called out for help.

Officer Stewart was found to have no facial injuries to support either of Officer Roscoe's versions of any deliberate punches to Officer Stewart's face.

The review of Harley Valleys cell phone recording was revealing. We note Officer Stewart's face was fully exposed to Officer Roscoe's barrage of closed fist punches directed at Chasrick Haredi's face. We find it likely one of Officer Roscoe's punches may have landed a glancing blow to Officer Stewart's face.

Lastly, the frame-by-frame analysis definitively shows Chasrick Heredia holding his black cell phone in his right hand from the moment he was arrested until he dropped the phone, well after Officer Stewart had gotten off the ground where she first saw Chasrick Heredia attempting to pick up his dropped phone. Officer Stewart claimed she was punched in the face while pinned down to the road. We find it improbable that Chasrick Heredia punched Officer Stewart with his right hand while attempting to cling to his cell phone.

---

[180] Officer Roscoe Deposition Page 121, Lines 1 through 9.
[181] Officer Roscoe Deposition Page 122, Lines 15 through 23.

## Summary

Officer Roscoe's initial contact and subsequent excessive use of force used to attempt to arrest Roscoe Heredia went far beyond reasonable explanation with regards to the Manchester Police Standard Operation Procedures governing Code of Ethics, Use of Force, and Discretion. We will begin our summary with Officer Roscoe's lack of adherence to **Section IV- CODE OF ETHICS** as noted below:

Officer Roscoe allowed his private life and intimate relationship with Officer Stewart to infiltrate his professional life. This emotional bond ultimately influenced why Officer Roscoe so aggressively went after and excessively beat Chasrick Heredia.

Officer Roscoe failed to remain calm and a professional demeanor in the face of danger, scorn, and ridicule from a loud, group of intoxicated friends, all of whom were leaving a birthday party that Officer Roscoe was made aware of whose were being noisy and insulting toward Officer Roscoe, causing the beginning of a loss of self-restraint.

Officer Roscoe permitted his personal feelings, prejudices, animosities, and friendships to influence his professional decisions.

Officer Roscoe failed to enforce the law courageously and appropriately without fear or favor malice, or ill will, by employing unnecessary force and violence against Chasrick Heredia.

We will continue with violations of **Section VII- USE OF FORCE**

Section E of the Use of Force SOP states in part that <u>No unnecessary or unreasonable force or means of restraint may be used detaining or arresting any person</u> [Emphasis Added] *(RSA 594: 4).*

After straddling and pinning Chasrick Heredia to the roadway surface with his legs, Officer Roscoe was recorded beginning a relentless fusillade of closed fist punches to Chasrick Heredia's face, beating Chasrick Heredia about the face until Officer Roscoe felt he had achieved the desired results reporting in part, *"<u>I made contact with Chasrick's face which had a desired effect as it stunned him</u>…* [Emphasis Added]*"* [182]

---

[182] Officer Roscoe Deposition Page 122, Lines 15 through 23.

Officer Roscoe's admission to punching Chasrick Heredia in the face until the desired effect was obtained is a clear admission of a violation of NH RSA 594:4 as Officer Roscoe's conduct unquestionably constitutes not only excessive force, but unnecessary and unreasonable force in attempting to arrest Chasrick Heredia.

Officer Roscoe's assault of Chasrick Heredia violates the SOP that officers may use only the minimum amount of force necessary to accomplish lawful objectives. The lawful use of force must be controlled and confined so that an officer will not subject himself/herself to civil and criminal liability. Despite this foreknowledge Officer Roscoe used excessive force violating RSA 594:4 and is now the subject of civil litigation under Case 21-CV-198-PB Chasrick Heredia v Michael Roscoe, et al. US District for the District of New Hampshire.

Officer Roscoe cannot claim ignorance as he, per SOP, was issued a copy of the pertinent SOP and instructed in the laws regarding the use of force as well as the Standard Operating Procedures pertaining to "Authority, Law Enforcement Role" prior to being authorized to carry any weapons. The issuance and instruction shall be documented.

Officer Roscoe is required to complete training in the use of force, which will specifically deal with, but not limited to, Chapter 627 of the New Hampshire RSA Justification, 627:5 Physical Force in law enforcement annually. Policies and procedures of the department reference to the use of non-deadly and deadly force and the use of lethal and less lethal weapons.

We will continue with violations of Section **VII, USE OF NON-DEADLY FORCE/LESS LETHAL WEAPONS.**

Section A of the use of non-deadly force/less lethal weapons addresses the Manchester Police Department SOP regarding the deployment and use of tasers and OC spray. Officers are required to be familiar these less lethal weapons. Section A states:

*Officers of the Manchester Police department are issued or have at their disposal various weapons, such as Taser X2 and OC, which are generally recognized to be less lethal under normal use. Each of these articles is listed in the chapter that follows, and officers shall be familiar with their authorized and intended use as less lethal weapons. Officers shall also be aware that less lethal weapons may in fact inflict death or serious injury bodily injury under certain conditions or circumstances.*[183]

---

[183] Manchester Police Department Standard Operating Procedure. Authority, Law Enforcement Role Effective Date July 2017 BATES MPD 094 and 095.

Officer Roscoe failed to maintain control of his taser while attempting to incapacitate Chasrick Heredia as Officer Stewart was still struggling with Chasrick Heredia to take him into custody. Officer Stewart recalled this incident in her report writing in part, *"I shouted to the male* (Chasrick Heredia) *to let go of me and continued attempting to place Chasrick into custody. Ofc. Roscoe then announced that he was going to tase Chasrick. I turned to face Ofc. Roscoe while still having my left hand on Chasrick's shoulder. Chasrick continued to resist during the moment the taser prongs were deployed into Chasrick's back as well as the back of my left hand. Both myself and Chasrick briefly sustained the effects of the taser at this moment.*

Officer Roscoe's red taser contact point lights can be seen in the video crossing over Officer Stewart and Officer Nocella as Chasrick Heredia. Officer Stewart continued her description of events, *"Chasrick then began to move away from the car as was tased again by Ofc. Roscoe. Chasrick sustained the full effects of this second taser deployment and was transitioned to the ground* [Emphasis Added]. [184]

We find had Officer Roscoe appropriately deployed his taser using the drive stun feature (close body contact without deploying barbs) when Chasrick Heredia pinned down on the roadway earlier Chasrick Heredia would have suffered the same neuromuscular incapacitation as when he was tased the second time by Officer Roscoe after his first failed attempt. We find no reason, with this opportunity at hand, that neither Officer Roscoe, Officer Harrington, nor Officer Stewart deployed their taser in the drive stun position.

Officer Roscoe, Officer Harrington, or Officer Stewart could have also deployed OC spray at any point in time to take Chasrick Heredia into custody. Officer Stewart's, Officer Harrington, Officer Nocella tasers and OC spray were not deployed at any time during this incident.

We will continue with violations of **Section VI- DISCRETION**

Officer Roscoe failed to use *any* discretion in dealing with original noise complaint. Officer Roscoe had many opportunities to defuse the crowd's growing anger and simply tactically walked away to await a supervisor and additional

---

[184] Incident/ Investigative Supplemental Report. Agency MPD, Case Number 18-006983, page 3 of 4, dated June 6, 2018, Author Officer Canada A. Stewart.

officers to safely and effectively deal with the unruly crowd, which we find would have avoided the anger the crowd quickly displayed after Officer Roscoe attempted the full custody arrest of Chasrick Heredia.

Instead, Officer Roscoe began to give direct commands to the crowd to disburse and leave or face arrest, all in the face of an unruly crowd that far outnumbered police presence at that time. Officer Roscoe should have recalled what he was instructed, *"The application of discretion, where it is appropriate, does not reflect a weak or ineffective officer. Rather, discretion comes of the intelligent and mature officer who is aware that his/her actions can reach far beyond the moment and can irrevocably affect lives and liberties."*.[185]

We do not know whether Officer Roscoe's failure to use appropriate discretion would have made Officer Roscoe appear weak or ineffective in the eyes of his girlfriend, Officer Stewart, but considering his actions, we feel it did.

Officer Roscoe should have always remained mindful that the authority vested in his badge should be tempered with discretion. We find he did not.

Officer Roscoe should have used discretion as a resolution as a first step to the unfolding situation at the GlowBar, not police power to arrest without a warrant for minor infractions of the law. Again, he did not.

Officer Roscoe, by virtue of his departments SOP was directed to, *"...use discretion consistent with the philosophy, goals and objectives of the department, and in keeping with the degree of fairness expected by the ordinary, reasonable, and prudent member of the community.*[186] Officer Roscoe ignored this SOP as well.

Had Officer Roscoe been proactive he could have suggested the GlowBar bouncers offer to have Jeff Taylor and Joshua Heredia, the first men Officer Roscoe spoke with besides the bouncer, go back into the bar until closing be supported. Officer Roscoe did not. Nor Did Officer Harrington or Officer Stewart.

After Chasrick Heredia exited the GlowBar, Officer Roscoe reported that several of Chasrick Heredia's friends were attempting to help the police get Chasrick Heredia out of the street because he was the rowdiest individual. Several of the celebrants wanted to prevent any problems. This was Officer Roscoe's moment to seize the initiative and support the crowd in getting Chasrick Heredia to

---

[185] Manchester Police Department Standard Operating Procedure. Authority, Law Enforcement Role Effective Date July 2017 BATES MPD 092.
[186] Manchester Police Department Standard Operating Procedure. Authority, Law Enforcement Role Effective Date July 2017 BATES MPD 092.

leave with his friends. Officer Roscoe did nothing to further the crowds desire to see the situation end peacefully.

Officer Stewart reported at that time that Chasrick Heredia friends began saying it was his birthday and telling him to calm down or he was going to get arrested. Jose De La Cruz began pushing Chasrick away from the front door of the GlowBar to calm him down and move him away from the area of which they were telling him he could not remain. As Jose De La Cruz kept pushing Chasrick Heredia multiple times in the chest, Chasrick Heredia became more disruptive and began pushing Jose De La Cruz. Officer Stewart took a hold of Jose De La Cruz's arm and pulled him back away from Chasrick Heredia and told him that he needed to stop fighting and calm down or else he would be arrested.

Unfortunately, Officer Stewart's attempt to use discretion and deescalate the situation was trumped by Officer Roscoe when he saw Chasrick Heredia pushing his friends away while still in the street screaming, "...don't F 'ing touch me."[187]

Officer Roscoe quickly reached his personal limit and attempted to place Chasrick Heredia into custody without considering the potential consequences of the now angry crowd turning into a mob that neither Officer Harrington, nor Officer Roscoe were able to effectively control.

As opposed to making efforts to defuse the crowd by using his all of the SOP training he received, Officer Roscoe instead chose to recklessly abandon mandatory training and arrest Chasrick Heredia in front of Chasrick Heredia's intoxicated brother, Joshua Heredia and other  friends; setting the stage for the riot that followed leading to not only the excessive force applied to Chasrick Heredia, but to the injuries  both Officer Roscoe and Officer Stewart's sustained by mob violence.

We find Officer Stewart's reported reason for self-assigning herself to the same call her boyfriend was on is dubious. None of information she reported as justification to self-assign herself to the call had occurred until after her arrival. We find it more likely than not that a visit with her boyfriend at a call for service was too convenient to ignore. Neither Officer Roscoe or Officer Harrington stated they told her they were all set, and she could resume her normal patrol sector.

Officer Stewart's reported assault by Chasrick Heredia and her orders to Chasrick Heredia to let her go as she was being held down by her hair were reportedly heard by Officer Roscoe as he was attempting to arrest Jose De La Cruz.

---

[187] Officer Roscoe Deposition Page 1114, Lines 2.

Officer Roscoe believed Officer Harrington was with Officer Stewart and continued with his effort to arrest Jose De La Cruz. Officer Roscoe reportedly again heard Officer Stewart call for help, now with stress in her voice as she continued yelling at Chasrick Heredia to let her hair go. Officer Roscoe looked her way and realized Officer Harrington was not there and that Officer Stewart was in trouble.

Officer Roscoe then witnessed what he alleged to be his girlfriend, pinned to the ground by her hair, get punched repeatedly in the face by Chasrick Heredia.

We find it reasonable to conclude Officer Roscoe became emotionally enraged and abandoned Jose De La Cruz so quickly to aid his girlfriend that he dropped his handcuffs on the street and abandoned them. We are unaware if these handcuffs were ever recovered.

Upon reaching his still pinned down girlfriend, Officer Roscoe, for the next approximate 5.0 seconds, was video recorded from multiple angles, delivering at least 4 successive left and right substantial closed fist punches to Chasrick Heredia's exposed face. The assault continued until Officer Roscoe was hit on the left side of his face by someone else in the mob and pulled off Chasrick Heredia, effectively ending Chasrick Heredia's sustained beating.

Officer Roscoe confirmed this in his report narrative, stating in part," I *made contact with CHASRICK's head approximately 3-4 times, all while he was still holding onto officer Stewart's hair." Officer Roscoe continued in part, "I saw a subject come from my right side and felt something hit me on the left side of my face."*[188]

We find Officer Stewart's report as to why she was punching Chasrick in the face with closed fists multiple times not supported by the provided evidence.

Chasrick Heredia was video recorded holding onto his Apple type cell phone in his right hand during this encounter, even as he briefly used his left hand to grab Officer Stewart's hair to gain leverage to get up off the ground.

There was no evidence of Officer Stewart's face being injured in the post-arrest video recording-only disheveled hair. We were not provided with emergency room or police department photographs of Officer Stewart to support the complaint that she was punched in the face by Chasrick Heredia with a closed fist, or for that matter, a cellphone to demonstrate Chasrick Heredia assaulted Officer Stewart as

---

[188] Incident/ Investigative Supplemental Report. Agency MPD, Case Number 18-006983, page 3 of 4 and page 4 of 4, dated June 7, 2018, Author Officer Michael Roscoe.

she reported. Moreover, Officer Roscoe did not see any actual punches being delivered to Officer Stewart's face. Additionally, there are no photographs video recording of facial injuries that would be evident from being punched in the face multiple times.

Consequently, Officer Stewart's punching of Chasrick Heredia multiple times in the face with a closed fist cannot be justified and her acknowledged use of closed fist punches constitutes excessive force.

Officer Nocella responded to the GlowBar for an officer in need of assistance about 4 minutes after Officer Roscoe and Officer Harrington attempted to take Chasrick Heredia into custody. Officer Nocella arrived and immediately observed officers being attacked by multiple male subjects with a massive crowd observing the events take place.

Officer Nocella ran from his car towards Officer Stewart, who was reportedly pinned up against a vehicle by Chasrick Heredia. Officer Nocella and Officer Harrington reportedly saw Officer Stewart attempting to free herself from being pinned against a vehicle by Chasrick Heredia. Officer Nocella reported running and grabbed ahold of Chasrick Heredia, who reportedly pushed Officer Nocella away. At no point in Harley Valley's cell phone recording do we see any punches from Chasrick Heredia. Nor did we see Chasrick Heredia pin anyone.

Officer Nocella stated in a Supporting Affidavit for arrest w/o warrant, *"I delivered a knee strike to the area of his chest and yelled "STOP." Chasrick Heredia looked at me and smiled menacingly and screamed at the top of his lungs "AHHHHHH!" as he continued to thrash his arms and wrestle with me. I was eventually able to bring Heredia to the ground after a physical struggle where he was actively trying to free himself from me and place him under arrest.* [189]

Officer Nocella reported that it was at this time Officer Roscoe advised him that he was going to tase Chadwick Heredia, and he deployed his department issued taser, which had no effect. As Officer Nocella continued to struggle to gain control of Chasrick Heredia's hands, Officer Roscoe then advised him the was going to deploy taser again, which he did. Officer Nocella heard Chasrick Heredia say, "OW."[190]

---

[189] Supporting Affidavit for Arrest W/O Warrant MPD Case #18-006983, dated May 11, 2018, authored by Officer Matthew T. Nocella.
[190] Incident/ Investigative Supplemental Report. Agency MPD, Case Number 18-006983, page 16 of 36, dated May 11, 2018, Author Officer Matthew T. Nocella.

We find Officer Nocella lacked the information and with seconds of limited opportunity elected to drive his knee, as recorded in the Harley Valley video recording into Chasrick Heredia's chest as a first contact.

We note that early on during this call, before Chasrick Heredia was placed under arrest, Officer Roscoe wrote in his report, *"At one point, while standing on the center line of Hanover Street, I was giving  a lawful order to get out of the street when  DE LA CRUZ turned around  and reached out to me, grabbing the area of my duty belt, and pushed me back. I pushed DE LA CRUZ back to create distance, as said <u>"Police don't touch me, get out of the street</u>* [Emphasis Added]."[191]

This event occurred moments before Chasrick Heredia was placed under arrest. We find the assault on Officer Roscoe by Jose De La Cruz in the middle of Hanover Street and independently confirmed by Officer Harrington, only resulted in a verbal command, *"Police don't touch me, get out of the street"*[192] and not an immediate full custody arrest for assault on a police officer.

At no time during this incident did we observe Chasrick Heredia engage in anything more than passive resistance to any of the police officers, either assigned, or unassigned to this call. Chasrick Heredia's passive resistance did not justify the level of excessive force to which he was subjected.

However, moments later Chasrick Heredia pushed past Jose De La Cruz, screaming profanities and took out his cell phone in front of Officer Roscoe telling Officer Roscoe he was being recorded. Disorderly conduct and pushing Jose De La Cruz, the same person Officer Roscoe had just pushed, and not arrested, was Officer Roscoe's justification to arrest Chasrick Heredia, and not Jose De La Cruz.

We note that after Chasrick Heredia was placed under arrest, Officer Roscoe reported that while seated in a patrol vehicle awaiting the arrival of AMR, he noticed DE LA CRUZ walking about on the sidewalk appearing that he was recording officers and continuing his behavior. Officer Roscoe continued in his report that he feared that in the chaos DE LA CRUZ would get away as Officer Roscoe has previously attempted to place DE LA Cruz into custody for assaulting Officer Roscoe. Officer Roscoe then walked over to DE LA CRUZ and arrested him.

---

[191] Incident/ Investigative Supplemental Report. Agency MPD, Case Number 18-006983, page 3 of 4, dated June 7, 2018, Author Officer Michael Roscoe.

[192] Incident/ Investigative Supplemental Report. Agency MPD, Case Number 18-006983, page 3 of 4, dated June 7, 2018, Author Officer Michael Roscoe

We find Officer Roscoe and Officer Stewart's relationship affected far more than the outcome of Chasrick Heredia arrest and trial, we find it adversely affected both officers professional conduct on duty. Adverse effects that led to Chasrick Heredia receiving a completely unnecessary and spiteful beating at the hands of Officer Roscoe.

In closing, we find Officer Roscoe decision to use unreasonable and excessive force against Chasrick Heredia was not error, or misjudgment. Rather, it was purposeful and personal.

**Analysis Completed By:**

Carl Lakowicz, Owner
C.L. Forensic Solutions, LLC.