### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW HAMPSHIRE

**Chasrick Heredia**

     v.                                 Case No. 21-cv-198-PB

                                               Opinion No. 2023 DNH 135

**Michael Roscoe et al.**

## MEMORANDUM AND ORDER

The plaintiff, Chasrick Heredia, sued Michael Roscoe and several other members of the Manchester Police Department for violating his constitutional rights while effectuating an arrest. At the end of a four-day trial, the jury found for Heredia only as to his excessive force claim against Roscoe and awarded nominal and punitive damages. The parties now move for an indicative ruling on their joint motion to vacate the judgment in order to facilitate settlement. After considering the parties' circumstances and the public interest, I conclude that vacatur is not warranted.

## I.    BACKGROUND

Heredia filed a complaint in this court against Manchester Police Officers Michael Roscoe, Canada Stewart, Matthew Nocella, and Nathan Harrington, alleging that they (1) used excessive force while arresting Heredia, (2) denied Heredia necessary medical treatment, and (3) fabricated evidence against Heredia. Doc. 33 at 5-8. The defendants first encountered

Heredia while responding to a noise complaint at a local bar and, after a confrontation instigated by Heredia, they placed him under arrest for disorderly conduct. Heredia struggled with Officer Stewart as she was attempting to place him into custody, causing her to sustain a concussion. Officer Roscoe intervened by repeatedly punching Heredia's head using both fists. Officers Stewart and Nocella were later able to bring Heredia to the ground, at which point Roscoe shot Heredia with a taser. Heredia alleged that the officers denied him necessary medical treatment while he was in custody and subsequently filed police reports containing intentional falsehoods.

Following an unsuccessful motion for judgment on the pleadings, the case proceeded to a jury trial. The jury ultimately found for the defendants on all counts except for the excessive force claim against Roscoe. Doc. 88. On that claim, the jury did not find any compensatory damages, but awarded one dollar in nominal damages and $2,000 in punitive damages. Id. at 1-2.

Roscoe subsequently filed a motion for judgment as a matter of law under Rule 50 of the Federal Rules of Civil Procedure or, in the alternative, for remitter as to the punitive damages under Rule 59. Doc. 89 at 1. I denied Roscoe's motion and entered judgment in accordance with the jury verdict. Doc. 91. Roscoe appealed the entry of judgment, which is currently pending

before the First Circuit, Doc. 96, and Heredia moved for attorney's fees and

costs, which is currently pending before me, Doc. 92.

The parties subsequently participated in a settlement conference with

the First Circuit's Office of Settlement Counsel and arrived at a post-

judgment settlement agreement. Doc. 111-1 at 1-2. The settlement agreement

is contingent upon vacatur, and provides that Heredia will receive a lump

sum amount in exchange for his release of claims, including his motion for

attorney's fees. Id. at 16-17. The agreement makes clear that Roscoe denies

responsibility, but provides that a copy of the settlement agreement will be

"kept on file at the municipal clerk's office and made available for public

inspection[.]" Id. at 15, 19. The agreement further provides that "[a]ny

reporting requirements that existed prior to the judgment and verdict being

vacated still exist even after the judgment and verdict are vacated" and that

"any discretionary reporting that would have been made in the absence of

[the settlement agreement] shall still be made notwithstanding [the

agreement]." Id. at 19. The parties now move for an indicative ruling on their

joint motion to vacate the judgment pursuant to Federal Rule of Civil

Procedure 60(b) in order to effectuate their settlement agreement. Doc. 111.

## II.   STANDARD OF REVIEW

As a general rule, filing a notice of appeal divests a district court of

jurisdiction over all matters pertaining to the appeal. United States v.

Rodriguez-Rosado, 909 F.3d 472, 477 (1st Cir. 2018). Nonetheless, Rule 62.1 of the Federal Rules of Civil Procedure allows a district court to issue a so-called "indicative ruling" on motions it lacks authority to grant, thereby "inform[ing] the parties and [the circuit] court how it would rule on the merits of certain motions after an appeal has been filed[.]" LFoundry Roussett, SAS v. Atmel Corp., 690 F. App'x 748, 750 (2d Cir. 2017). When presented with a request for an indicative ruling on a particular motion, "the court may: (1) defer considering the motion; (2) deny the motion; or (3) state that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue." Fed. R. Civ. P. 62.1(a).

## III.   ANALYSIS

The parties are seeking vacatur pursuant to Federal Rule of Civil Procedure 60(b)(6). Rule 60(b)(6) authorizes district courts "to vacate judgments whenever such action is appropriate to accomplish justice," including, in certain circumstances, to facilitate settlement. Klapprott v. United States, 335 U.S. 601, 615 (1949); see also Wal-Mart Stores, Inc. v. Rodriguez, 322 F.3d 747, 749 (1st Cir. 2003). Although "Rule 60(b) vests wide discretion in courts," Buck v. Davis, 580 U.S. 100, 123 (2017), vacatur under the rule should only be granted in "unusual and extreme situations where principles of equity mandate relief." Blue Diamond Coal Co. v. Tr. of the UMWA Combined Ben. Fund, 249 F.3d 519, 524 (6th Cir. 2001) (quoting Olle

v. Henry & Wright Corp., 910 F.2d 357, 365 (6th Cir. 1990)) (emphasis in

original). To this end, "the burden is on the Rule 60 movant to demonstrate

the existence of exceptional circumstances justifying relief from judgment."[1]

U-Nest Holdings, Inc. v. Ascensus Coll. Sav. Recordkeeping Servs., LLC, 82

F.4th 61, 64 (1st Cir. 2023). "In determining whether [such] circumstances

are present, a court may consider a wide range of factors," including the

interests of the parties as well as the public. Buck, 580 U.S. at 123.

In United States Bancorp Mortgage Co. v. Bonner Mall, 513 U.S. 18, 29

(1994), the Supreme Court held that appellate courts may not vacate the

decisions of lower courts purely as a result of post-judgment settlement. The

Court noted that, although settlement may occasionally warrant vacatur,

"the determination is an equitable one" that must be supported by

"exceptional circumstances" and account for the public interest. Id. at 27, 29.

Although Bancorp considered the ability of appellate courts to vacate

lower court decisions pursuant to 28 U.S.C. § 2106, some courts have applied

its reasoning to motions under Rule 60(b)(6). See, e.g., Amoco Oil Co. v. U.S.

---

[1]     Courts have used "the terms 'extraordinary circumstances' and
'exceptional circumstances' interchangeably when discussing Rule 60(b)(6)."
Budget Blinds, Inc. v. White, 536 F.3d 244, 255 n.13 (3d Cir. 2008). I use
"exceptional circumstances" because it is the phrase most recently employed
by the First Circuit, see U-Nest Holdings, Inc., 82 F.4th at 64, but
nonetheless understand it to be coterminous with "extraordinary
circumstances," see Vertex Surgical, Inc v. Paradigm Biodevices, Inc., 648 F.
Supp.2d 226, 229 (D. Mass. 2009).

Envtl. Prot. Agency, 231 F.3d 694, 698 (10th Cir. 2000); Tustin v. Motorists
Mut. Ins. Co., 668 F. Supp.2d 755, 762 (N.D. W. Va. 2009). Other courts have
concluded that district courts are not cabined by Bancorp's presumption
against vacatur, and may instead engage in a more flexible inquiry that
considers the balance of the equities. See, e.g., Marseilles Hydro Power LLC
v. Marseilles Land & Water Co., 481 F.3d 1002, 1003 (7th Cir. 2001); Am.
Games, Inc. v. Trade Prods., Inc., 142 F.3d 1164, 1167-1168 (9th Cir. 1998).
The First Circuit has not taken an explicit position on the matter.

But I need not resolve whether Bancorp applies to vacatur under Rule
60(b) because, under any standard, the existence of exceptional
circumstances and the public interest are of paramount importance. See
Bancorp, 513 U.S. at 27, 29; Buck, 580 U.S. at 123; Ungar v. Palestine
Liberation Org., 599 F.3d 79, 86 (1st Cir. 2010). Cf. Valero Terrestrial Corp.
v. Paige, 211 F.3d 112, 117 (4th Cir. 2000) ("the standards under [Bancorp]
and Rule 60(b) are essentially the same."); Vertex Surgical, Inc., 648 F.
Supp.2d at 229-230 (concluding that Bancorp effectively adopted the Rule
60(b)(6) standard). Those considerations are determinative here. See Bouret-
Echevarria v. Caribbean Aviation Maint. Corp., 784 F.3d 37, 43 (1st Cir.
2015) (quoting Ungar, 599 F.3d at 86) (noting that, in evaluating a motion
under Rule 60(b), "[t]here is no ironclad rule requiring an in-depth, multi-

6

factored analysis in every case" and that "[s]ometimes one factor predominates to such an extent that it inexorably dictates the result").

Here, the parties have not demonstrated the existence of "exceptional circumstances justifying extraordinary relief." See Paul Revere Variable Annuity Ins. Co. v. Zang, 248 F.3d 1, 5 (1st Cir. 2001) (quoting Ahmed v. Rosenblatt, 118 F.3d 886, 891 (1st Cir. 1997)). The parties assert that the exceptional circumstances are twofold: first, that Heredia would recover more than the jury awarded him and, second, that Roscoe would avoid potentially devastating consequences to his career. Doc. 111-1 at 8. But the fact that Heredia would recover more is hardly extraordinary; indeed, it seems likely that a plaintiff will usually receive greater recompense pursuant to a post-judgment settlement, or else he would have little incentive to settle.

And the assertion that vacatur will eradicate the threats to Roscoe's career is too speculative to support exceptional circumstances. See Amoco Oil Co., 231 F.3d at 700 (declining to find exceptional circumstances based on a speculative threat of future harm). The parties' concerns about the impact of the jury's verdict on Roscoe's career are premised on N.H. Rev. Stat. Ann. § 105:13-d, which provides for the maintenance of a public "exculpatory evidence schedule" (EES) that consists of "a list of all current or former law enforcement officers whose personnel information contain potentially exculpatory evidence." An officer's placement on the EES is entrusted to the

discretion of his employing law enforcement agency. N.H. Rev. Stat. Ann. § 105:13-d, III. "The listing is a form of official public branding by the state. The effects of such an official public branding on one wishing to work as a police officer are likely to be immediate and concrete." Doe v. Town of Lisbon, 78 F.4th 38, 47 (1st Cir. 2023). Although Roscoe could not represent whether the Manchester Police Department would elect to place him on the EES, he contends that, if they did, it would be "potentially detrimental to [his] future career in law enforcement." Doc. 111-1 at 9.

Setting aside the fact that Roscoe's placement on the list is itself speculative, there is nothing to support the parties' assertion that vacatur would mitigate the threats to Roscoe's career posed by the EES. Because the settlement agreement explicitly provides that it will not impact any required or discretionary reporting, granting vacatur would not permit Roscoe to avoid placement on the EES or its concomitant consequences. Although Roscoe contends that the impact of being placed on the EES would be lessened if it were reported that he had "judgment against him," as opposed to a "jury finding against him," he does not offer any support for his contention. Such speculation is insufficient to establish exceptional circumstances. See Teamsters, Chauffeurs, Warehousemen & Helpers Union, Local 59 v. Superline Transp. Co., 953 F.2d 17, 20 (1st Cir. 1992) (noting that, in ruling on a Rule 60(b)(6) motion, courts should not "give credence to the movant's

bald assertions, unsubstantiated conclusions, periphrastic circumlocutions, or hyperbolic rodomontade").

Furthermore, it is worth noting that the parties' asserted "exceptional circumstances" were entirely foreseeable. Of course, anytime a plaintiff elects to go to trial, it is possible that he will be awarded less than he would have received had he settled. And, because N.H. Rev. Stat. Ann. § 105:13-d was in effect prior to the start of trial, Roscoe knew or should have known that the jury could render a verdict warranting placement on the EES. Accordingly, these are not the sort of unknowable repercussions that the parties could not have anticipated sooner, but rather the inherent risks of litigation that the parties voluntarily incurred by proceeding to trial. That such consequences came to pass, while undoubtedly disappointing to both parties, does not give rise to exceptional circumstances. See Atkinson v. Prudential Prop. Co., 43 F.3d 367, 373 (9th Cir. 1994) ("'Exceptional circumstances' are not present every time a party is subject to potentially unfavorable consequences as a result of an adverse judgment properly arrived at.").

In addition to the lack of exceptional circumstances, the public interest counsels against vacatur. See Bancorp, 513 U.S. at 26 (noting that granting equitable relief, including vacatur, requires consideration of the public interest); accord Motta v. Dist. Dir. of I.N.S., 61 F.3d 117, 118 (1st Cir. 1995); Hartford Cas. Ins. Co. v. Crum & Forster Specialty Ins. Co., 828 F.3d 1331,

1337 (11th Cir. 2016). The parties contend that the public's interest in the judgment is minimal since it is non-precedential and does not identify which use of force was excessive. While the parties are correct that the judgment contributes little to the development of decisional law, they fail to account for the strong public interest in maintaining the integrity of jury verdicts. "In most situations, the sanctity of the jury trial would be compromised if parties are allowed to weigh the cost benefits by proceeding to trial only to receive an unfavorable decision that can be vacated by a way of subsequent settlement." See Jacobs v. Alexander, No. 1:05-cv-01625-SAB (PC), 2017 WL 2081080, at *2 (E.D. Cal. May 15, 2017). Here, eight members of the community spent four days dutifully considering the evidence and ultimately rendered a verdict that reflected thoughtful and considered deliberations. To discard their decision would be to unfairly "trivialize the time, attention and effort expended by the [jurors]," and could cause the jurors to ask themselves, "'Why did I bother to serve?' or 'Why should I bother to serve the next time I'm called when my decision was discarded in [Heredia's] case?'" Clarke, 2013 WL 686680 at *3.

Moreover, "[t]he social value of this judgment, in particular, is amplified by the nature of the case as a constitutional claim." Evans v. Mullins, 130 F. Supp.2d 774, 777 (W.D. Va. 2001). This judgment does not resolve a purely private dispute, but rather speaks to a matter of significant

public concern; namely, the unlawful acts of a government official charged with upholding the law. Judgments such as these belong, not only to the parties, but to the community at large. See Bancorp, 513 U.S. at 26. And the community has a vital interest in both knowing when one of its law enforcement officers violates the Constitution and deterring future misconduct. See Waller v. Georgia, 467 U.S. 39, 47 (1984) (noting the "strong [public] interest in exposing substantial allegations of police misconduct to the salutary effects of public scrutiny"). Rendering the jury's findings void could ultimately undermine these important interests. See Evans, 130 F. Supp.2d at 777.

Finally, while the parties are correct that vacatur would preserve judicial resources moving forward by mooting Heredia's motion for fees and Roscoe's appeal, they fail to appreciate the significant judicial resources that have already been expended in resolving this case. See Clarke v. Castro, No. 10 Civ. 6330 (HBP), 2013 WL 686680, at *4 (S.D.N.Y. Feb. 26, 2013) ("the expenditure of judicial resources is not just a prospective concern[.]"). In addition to the time and effort volunteered by the jurors in this case, the court and its personnel have allocated substantial time and resources to resolving the parties' various motions and trial objections, as well as facilitating a multi-day jury trial. "Vacatur of the judgment would render the

foregoing efforts wasted and undermine the public's interest in the productive use of a court's time and resources." Id.

In sum, considering the absence of exceptional circumstances and the public's interest in the finality of the judgment, I conclude that the parties have not demonstrated that the extraordinary remedy of vacatur is warranted. That said, I am mindful of the complexities raised by this case. The evidence presented to the jury by both sides painted a picture of a chaotic scene and a rapidly evolving situation fraught with uncertainties. The jury's verdict, much like the evidence, contains nuance: the finding of liability combined with the relatively modest award reflects an understanding that Roscoe was warranted in using some amount of force, but that the force employed was nonetheless excessive and the product of Roscoe's reckless indifference to Heredia's federally protected rights. This verdict, while entirely appropriate and supported by the evidence, undoubtedly leaves both parties in a suboptimal position. I also recognize that it would be unduly harsh to judge Roscoe's fitness to continue his career as a law enforcement officer based solely on the conduct that led to the jury's verdict. Accordingly, I have no objection to granting vacatur should the First Circuit conclude that such a remedy is appropriate. But, in the absence of such direction from the First Circuit, I would exercise my discretion to deny the parties' motion for vacatur.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, the parties' joint motion for an indicative ruling on their motion to vacate judgment (Doc. 111) is denied.

SO ORDERED.

<u>/s/ Paul J. Barbadoro</u><br>
Paul J. Barbadoro<br>
United States District Judge

October 25, 2023

cc:    Counsel of record