UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

<u>Chasrick Heredia</u>

      v.                              Case No. 21-cv-198-PB
                                           Opinion No. 2024 DNH 036

<u>Michael Roscoe et al.</u>

## <u>MEMORANDUM AND ORDER</u>

The plaintiff, Chasrick Heredia, sued Michael Roscoe and several other members of the Manchester Police Department for violating his constitutional rights while effectuating an arrest. A jury found for Heredia only as to his excessive force claim against Roscoe and awarded nominal and punitive damages. Pursuant to 42 U.S.C. § 1988, Heredia now moves for $163,130.15 in attorney's fees and costs. For the foregoing reasons, Heredia's motion is granted in part and denied in part.

## I.    <u>BACKGROUND</u>

A.    Heredia's Arrest

The defendants, Manchester Police Officers Michael Roscoe, Canada Stewart, Matthew Nocella, and Nathan Harrington, first encountered Heredia and a few of his friends while responding to a noise complaint at a local bar. Heredia instigated a confrontation with the officers, who then placed him under arrest for disorderly conduct.

Roscoe attempted to take Heredia into custody, but abandoned his efforts in order to detain one of Heredia's friends who was intervening in the arrest. Stewart then attempted to take Heredia into custody, but Heredia struggled against her, causing Stewart to sustain a concussion. Based on his belief that Heredia was punching Stewart, Roscoe began repeatedly punching Heredia in the head with both fists. Stewart and Nocella attempted to bring Heredia to the ground, at which point Roscoe shot Heredia with his taser. Nocella was eventually able to place Heredia in handcuffs and transport him to jail. Although Heredia suffered a number of cuts and bruises during the incident, he was not offered any medical assistance.

Following the arrest, each of the officers filed an incident report claiming that Heredia had grabbed Stewart's hair and repeatedly punched her. Based in part on these allegations, Heredia was charged in state court with attempted murder, first-degree assault, second-degree assault, simple assault, felony resisting arrest, felony riot, two counts of misdemeanor resisting arrest, and misdemeanor disorderly conduct. A jury acquitted Heredia of the attempted murder and assault charges but convicted him on the remaining charges.

Sometime after his trial, Heredia learned that Stewart and Roscoe were in a committed, romantic relationship at the time of the incident. Heredia moved for a new trial based on the state's failure to disclose the

officers' relationship, which the court granted. Heredia eventually pleaded guilty to resisting arrest, riot, and disorderly conduct, but consistently denied that he punched Stewart.

B.    Heredia's Civil Suit

Heredia retained Attorneys Stephen Martin and Seth Hipple to pursue a civil action against Roscoe, Stewart, Nocella, and Harrington. Heredia filed a complaint in this court pursuant to 42 U.S.C. § 1983, alleging that each of the officers violated his constitutional rights by (1) employing excessive force during the arrest, (2) exhibiting deliberate indifference to his serious medical needs, and (3) fabricating evidence that he punched Stewart. Following an unsuccessful motion for judgment on the pleadings, the case proceeded to a jury trial.

Over the course of a four-day trial, the jury heard testimony from several witnesses, including each of the four officers involved, a use-of-force expert retained by the defense, and Heredia. At the close of evidence, I entered judgment as a matter of law as to Heredia's deliberate indifference and fabrication of evidence claims against some of the defendants but presented the remaining claims to the jury.

The jury found for Heredia only as to his excessive force claim against Roscoe. On that claim, the jury concluded that Heredia had not proved

compensatory damages but awarded him $1 in nominal damages and $2,000 in punitive damages.

Heredia now moves for attorney's fees and costs pursuant to 42 U.S.C. § 1988. Heredia seeks to recover $143,170.00 in attorney's fees and $19,960.15 in expenses, for a total award of $163,130.15.

## II.    STANDARD OF REVIEW

Section 1988 provides that the "prevailing party" in an action brought under 42 U.S.C. § 1983 may recover "a reasonable attorney's fee as part of the costs[.]" A prevailing party is one who has "succeed[ed] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983) (quoting Nadeau v. Helgemoe, 581 F.2d 275, 278-279 (1st Cir. 1978)). Under § 1988, the prevailing party can recover his attorney's reasonable fees as well as certain out-of-pocket expenses necessarily incurred in prosecuting the case. Hutchinson ex rel. Julien v. Patrick, 636 F.3d 1, 17 (1st Cir. 2011).

The prevailing party has the burden of proving the reasonableness of the fees he seeks to recover. Torres-Rivera v. O'Neill-Cancel, 524 F.3d 331, 340 (1st Cir. 2008). "A reasonable fee is typically determined through the lodestar method, which involves multiplying the number of hours productively spent by a reasonable hourly rate to calculate a base figure." Id. at 336. In determining the hours productively spent on the litigation, the

court must "exclud[e] those hours that are excessive, redundant, or otherwise unnecessary." Perez-Sosa v. Garland, 22 F.4th 312, 321 (1st Cir. 2022) (cleaned up). "Once established, the lodestar represents a presumptively reasonable fee[.]" Lipsett v. Blanco, 975 F.2d 934, 937 (1st Cir. 1992).

Nonetheless, the court may exercise its discretion to "adjust the lodestar amount, either upward or downward, if the specific circumstances of the case warrant such an adjustment." Perez-Sosa, 22 F.4th at 321. Because attorney's fees awards are not mandatory, the "trial court's discretion in respect to fee awards is extremely broad." Lipsett, 975 F.2d at 937.

## III.   ANALYSIS

In support of his request for attorney's fees, Heredia submitted 160 pages of billing records, which reflect over 600 hours of attorney and staff time expended on this litigation, as well as several thousand dollars in various out-of-pocket expenses. Heredia asserts that his requested fees are reasonable in light of the complexity of the case and his ultimate success on the excessive force claim against Roscoe. Roscoe concedes that some award is warranted but argues that I should exclude certain fees and expenses in calculating the award and, furthermore, apply a downward adjustment to account for Heredia's limited success.[1] I address each argument in turn.

---

[1]     Roscoe states in a footnote that whether Heredia is "truly the 'prevailing party' for the purposes of awarding attorney's [fees]" is not

A.     Calculating the Lodestar

The attorneys' billing records indicate that they provided 300.75 hours of work at a rate of $300 per hour and 134.75 hours of work at a rate of $250 per hour.[2] Doc. 92-2 at 5. The billing records also show that their firm's paralegals and secretaries performed 175.25 hours of work on the case, which were variably billed between $60 and $175 per hour. Id. at 6.

Roscoe does not challenge the reasonableness of the hourly rates charged but asserts that a number of the time entries are unreasonable and therefore unrecoverable. Doc. 95-1 at 4-5 & n.1. Specifically, Roscoe argues that I should (1) refuse to award fees for work on Heredia's unsuccessful claims, (2) exclude hours spent deposing Attorney Donald Topham, the prosecutor in Heredia's criminal case, (3) deduct fees for time spent performing clerical work, (4) reduce the hourly fee awarded for work on the

---

entirely "clear-cut" given Heredia's limited success. Doc. 95-1 at 11 n.3. To the extent Roscoe is arguing that Heredia is not eligible to recover attorney's fees under § 1988, he is clearly wrong. The Supreme Court has held that "a plaintiff who wins nominal damages is a prevailing party under § 1988" and therefore eligible for an attorney's fees award under the statute. Farrar v. Hobby, 506 U.S. 103, 112 (1992). The qualified nature of Heredia's victory is relevant to the amount of fees that should be awarded but "does not affect the prevailing party inquiry[.]" Id. at 114.

[2]     According to Attorney Martin, the firm raised its rates part way through the litigation. Doc. 92-2 at 4.

fee petition, and (5) reduce the hours awarded to account for overbilling.[3] I consider each argument in turn.

    1.    <u>Work on Unsuccessful Claims</u>

Roscoe asserts that I should deduct hours dedicated to Heredia's deliberate indifference claims, fabrication of evidence claims, and excessive force claims against the other three officers since those claims were ultimately unsuccessful.

It is true that, as a general rule, plaintiffs are not entitled to recover fees for work on unsuccessful claims. Trainor v. HEI Hosp., 699 F.3d 19, 35 (1st Cir. 2012). However, "attorneys' fees may be awarded with respect to work performed on unsuccessful claims if those claims are interrelated with successful claims." Id. Claims are considered interrelated if they rest on a "common core of facts" or are "based on related legal theories." Lipsett, 975 F.2d at 940 (quoting Garrity v. Sununu, 752 F.2d 727, 734 (1st Cir. 1984)).

Here, all of Heredia's excessive force claims were interrelated because they were based on the same set of facts. The excessive force claims all arose out of the same incident, where multiple officers employed varying degrees of

---

[3]    As an alternative to these line-by-line deductions, Roscoe asserts that I could simply apply a 75% global reduction to Heredia's requested fees. I decline to do so and will instead apply the "more exacting approach to the lodestar method" that is "preferred" within the First Circuit. Burke v. McDonald, 572 F.3d 51, 64 (1st Cir. 2009).

force against Heredia in short succession. Each officer—including Roscoe—claimed that his or her use of force was justified based on Heredia's combative behavior towards the officers. In such a case, it would be impossible to litigate the legality of Roscoe's use of force without first establishing Heredia's actions towards the other officers and their responding force.

Heredia's fabrication of evidence claims, which were premised on the assertion that Heredia never punched Stewart, are intertwined with his excessive force claim for similar reasons. Because Roscoe asserted that his use of force was justified by Heredia's attack on Stewart, understanding what occurred between Heredia and Stewart was crucial to Heredia's excessive force claim against Roscoe.

In sum, because the facts that bore on Heredia's unsuccessful fabrication of evidence and excessive force claims also bore on his successful claim against Roscoe, counsel's work on the unsuccessful claims was "intertwined with, and contributed materially to, the eventual success" of Heredia's claim against Roscoe. See Trainor, 699 F.3d at 36.

The same cannot be said, however, of Heredia's deliberate indifference claims. While it is true that those claims also arose out of the same arrest, they were based on an entirely distinct set of facts. The deliberate indifference claims turned exclusively on post-arrest facts; namely, what sort

of injuries Heredia suffered and how the officers responded to those injuries. Litigating those facts did nothing to contribute to Heredia's excessive force claim, which turned solely on whether Roscoe's actions were justified at the time of the arrest. Work expended on the deliberate indifference claims therefore "cannot be deemed to have been expended in pursuit of the ultimate result achieved," and should be deducted from the fee award. Hensley, 461 U.S. at 435 (cleaned up).

The billing records, however, render it impossible to discern which hours were expended in pursuit of the deliberate indifference claims. The entries refer generally to various tasks, such as "preparing for trial" or deposing witnesses, but largely fail to specify which claims were addressed while performing those tasks. See, e.g., Doc. 93 at 13, 63. Because such "ambiguous time entries" provide "little, if any, basis for determining what work reflected in them was done to develop what claims," I am unable to parse which entries must be excluded from the ultimate award. Burke, 572 F.3d at 64.

In such a case, the First Circuit has stated that the district court may apply a "global reduction" to the fees based on a "proportionate estimate of the time spent" litigating the unsuccessful claims. Id. Here, the deliberate indifference claims were scarcely addressed throughout course of the litigation, which predominately emphasized the excessive force claims. At

trial, the facts relevant to the deliberate indifference claims were only briefly discussed and no witnesses were called to testify exclusively to the deliberate indifference claims. Based on my experience presiding over each stage of this litigation, I estimate that approximately 5% of counsel's efforts were directed towards the deliberate indifference claims and will reduce the fees accordingly.

2.    Attorney Topham

Heredia seeks to recover fees associated with locating and deposing Attorney Donald Topham, the prosecutor in Heredia's underlying criminal case. According to Attorney Martin, deposing Attorney Topham was "necessary to understand how he decided to pursue certain charges against [Heredia] in order to litigate the fabrication of evidence claim." Doc. 92-2 at 3. Roscoe argues that these fees should be excluded from the award because Attorney Topham's deposition testimony was not relevant to Heredia's excessive force claim. I agree.

Because Heredia did not call Attorney Topham at trial or seek to enter his deposition into evidence, the deposition could not have contributed to Heredia's success. Doc. 67 at 51. Moreover, Attorney Topham's deposition was principally focused on his charging decisions which, while relevant to the fabrication of evidence claims, had no bearing on the excessive force claims. Indeed, in ruling on a motion in limine filed by Heredia, I concluded that

Attorney Topham would not be permitted to testify about his views on the officers' use of force if called by the defense. Id. at 52-55. Thus, while Attorney Topham's deposition was arguably useful in developing the fabrication of evidence claims, it was of no use in litigating the excessive force claim against Roscoe. See Bodensteiner & Levinson, 2 State & Local Gov't C.R. Liab. § 2:39 (2023) (noting that, although work on related claims will generally "contribute to the successful claims," courts must nonetheless undertake "a close examination of the activities and time of plaintiff's counsel to determine whether each activity contributed to a successful aspect of the case"); accord Perez-Sosa, 22 F.4th at 324 (noting that, in fashioning a fee award, "an inquiring court must look not to labels but, rather, to the nature of the work and its utility to the case at hand").

Because I conclude that the time spent preparing for and ultimately deposing Attorney Topham was unnecessary, those entries must be deducted from the fees award.

3.    Clerical Tasks

Roscoe seeks to exclude from the award a number of time entries where the attorneys or their staff were performing clerical or administrative work.

As a general rule, the performance of purely clerical or administrative work is considered part of a firm's overhead and cannot be awarded under § 1988. See Nadarajah v. Holder, 569 F.3d 906, 921 (9th Cir. 2009); accord

Jacobs v. Mancuso, 825 F.2d 559, 563 (1st Cir. 1987). Accordingly, "[w]hen clerical tasks are billed at hourly rates, the court should reduce the hours requested to account for the billing errors." Nadarajah, 569 F.3d at 921 (collecting cases).

Heredia's billing records include 29.75 hours of clerical work performed by various secretaries. Doc. 92-2 at 6. "Fees for work done by secretaries and administrative staff are not compensable," but rather "considered part of the overhead included in counsel's fee," and therefore must be excluded from the award. McLaughlin by McLaughlin v. Bos. Sch. Comm., 976 F. Supp. 53, 66, 69 (D. Mass. 1997) (quoting Jacobs, 825 F.2d at 563).

Similarly, Heredia's billing records include 49.75 hours of work by attorneys or paralegals completing purely administrative tasks, such as scheduling meetings, drafting non-legal correspondence, compiling trial binders, or printing documents. This is the sort of non-legal, clerical work that should have been performed by the firm's secretaries and included in counsel's overhead. See Vela v. City of Hous., 276 F.3d 659, 681 (5th Cir. 2001) ("Paralegal work can only be recovered as attorney's fees if the work is legal rather than clerical."); Lipsett, 975 F.2d at 940 ("clerical or secretarial tasks ought not to be billed at lawyers' rates, even if a lawyer performs them."). Accordingly, I will deduct from the award fees for hours spent on clerical tasks, regardless of who performed the work. See Conservation Law

Found., Inc. v. Patrick, 767 F. Supp. 2d 244, 254 (D. Mass. 2011) ("Whether performed by attorneys or legal assistants, purely administrative work ought be either eliminated or paid at lower rates."); accord Terry v. City of San Diego, 583 F. App'x 786, 790 (9th Cir. 2014).

      4.    <u>Work on Fee Petition</u>

Although Roscoe does not generally challenge the reasonableness of the attorney's rates, he argues that the rates are excessive as applied to work on the fee petition given the comparatively simplistic nature of the task.

I agree that, as a general matter, "litigating a fee petition is typically an uncomplicated exercise" that warrants a lesser fee. Torres-Rivera, 524 F.3d at 340. Moreover, because the attorneys here raised their rates part way through the litigation, awarding Heredia's requested fees would lead to the anomalous result of awarding a higher rate for work on the fee petition ($300) than work on the earlier portions of the merits ($250). <u>Cf</u> <u>id.</u> (noting that "fees for [work on a fee petition] are often calculated at lower rates than those deemed reasonable for the main litigation").

I conclude that an hourly rate of $200 would reasonably compensate the attorneys for completing the relatively straightforward work of preparing

a fee petition and will apply that rate to the 9.5 attorney hours expended on the petition.[4]

5.    Overbilling

Roscoe asserts that the time entries are excessive and unreasonable in at least two respects. First, Roscoe argues that the there are several duplicative entries in the time records, including multiple rounds of review of the same documents and excessive hours spent conferencing among the attorneys and their staff. Second, Roscoe asserts that the attorneys' practice of billing in 15-minute increments impermissibly inflated their hours. Roscoe requests that I omit the duplicative time entries from the award and, further, apply a 25% across-the-board reduction to counteract the effect of quarter-hour billing.

Although Roscoe takes issue with certain instances where multiple attorneys and staff members worked on the same task, he does not appear to assert that the staffing patterns themselves were unreasonable. Indeed, the attorneys appeared to have made wholly reasonable staffing decisions.

---

[4]    Roscoe also seeks to reduce the hourly rate for the paralegal who worked on the fee petition. The rationale that justifies reducing the attorneys' fees does not extend to the paralegal's fees, particularly given that the paralegal's work on the fee petition was billed at the firm's lowest paralegal rate. See Baines v. Bellows, No. 1:19-cv-00509-LEW, 2022 WL 2753185, at *4 n.2 (D. Me. July 14, 2022) (concluding that a paralegal's hourly rates should not be reduced for work on a fee petition because "fee petitions and merits work likely generate equally complex tasks for paralegals").

Attorney Martin was the sole attorney on the case throughout the majority of the litigation, and only brought on Attorney Hipple to assist with the trial. This was a reasonable decision given the number of parties involved and the fact that the defendants employed two attorneys at all times. See Lipsett, 975 F.2d at 939 (noting that "the number of defendants, and the defense's formidable staffing patterns" were relevant to determining the reasonableness of staffing patterns).

Where, as here, two attorneys are reasonably deployed on a case, there will inevitably be "a need for some amount of coordination, including intramural conference." Hutchinson, 636 F.3d at 14. I do not find that the level of coordination and conferencing between Attorneys Martin and Hipple was excessive, and therefore will not deduct those hours from the award. See id. ("Everything turns on the reasonableness of the staffing patterns employed and the overall time spent.").

Nor do I find that the time expended reviewing the paralegals' work was excessive. While the use of paralegals is a broadly accepted, and even encouraged, "cost-saving device," Lipsett, 975 F.2d at 939; it nonetheless necessitates some amount of attorney supervision and review, cf. N.H. R. of Pro. Conduct 5.3 (discussing an attorney's obligation to appropriately supervise the work of paralegals). The time spent reviewing the paralegal's work was not excessive, and therefore will not be deducted from the award.

The attorneys' practice of billing in quarter-hour increments, however, does warrant a reduction. An attorney's time is typically rounded up to the next time increment, which inevitably results in some amount of "'breakage' favorable to the attorney." Perez-Sosa, 22 F.4th at 331. Because larger time increments result in more breakage, "the practice of quarter-hour billing may lead to overbilling." E. Associated Coal Corp. v. Dir., Off. of Workers' Comp. Programs, 724 F.3d 561, 576 (4th Cir. 2013). In order to counteract such overbilling, the First Circuit has held that district courts may apply a global reduction to a fee award based on quarter-hour billing records. See, e.g., Perez-Sosa, 22 F.4th at 331; Diffenderfer v. Gomez-Colon, 587 F.3d 445, 455-456 (1st Cir. 2009).

Here, it seems all but inevitable that the attorneys' quarter-hour billing practice resulted in some amount of overbilling. See Lucky Brand Dungarees, Inc. v. Ally Apparel Res., LLC, No. 05 Civ. 6757(LTS)(MHD), 2009 WL 466136, at *4 (S.D.N.Y. Feb. 25, 2009) (cited favorably in Perez-Sosa, 22 F.4th at 331) (noting that quarter-hour billing will "add[] an upward bias in virtually all cases"). Accordingly, I conclude that some amount of reduction is warranted.

I decline, however, to apply Roscoe's requested 25% reduction. While it is true that the First Circuit has affirmed similar reductions, such a significant reduction is not warranted here. Because the vast majority of the

15-minute billing entries combine multiple tasks, it is not clear that those billing entries were significantly inflated. Cf. Diffenderfer, 587 F.3d at 455-456 (affirming a 20% global reduction where "plaintiffs had billed fifty or more menial items in quarter-hour increments when the actual task would have taken a negligible amount of time"). Nor are the billing entries otherwise excessive, for the reasons I have explained. Cf. Perez-Sosa, 22 F.4th at 331 (affirming a 25% global reduction to account for both "quarter-hour billing and excessive time spent on reviewing discovery and communication with the client"). Therefore, I will apply a 10% across-the-board reduction to account for time inflated by quarter-hour billing.

6.   Lodestar Calculation

In sum, I calculate the lodestar as follows:

Hourly Fees Requested:                                    $143,700.00

Line Item Deductions:
    Attorney hours on Topham deposition:              -$2,182.50
    Paralegal hours on Topham deposition:               -$170.00
    Secretary hours:                                  -$2,155.00
    Paralegal clerical hours:                         -$4,490.00
    Attorney clerical hours:                          -$1,425.00
                                                     $133,277.50

Global Reduction for Deliberate Indifference Claims       -$6,663.87
                                                     $126,613.63

Reduced Fee for Work on Fee Petition                        -$950.00
                                                     $125,663.63

Global Reduction for Quarter-Hour Billing                 -$12,566.36
                                       Total:       $113,097.27

B.    Adjustment to Lodestar

The Supreme Court has recognized that "the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount" where the "plaintiff has achieved only partial or limited success," even if the "the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith." Hensley, 461 U.S. at 436. Accordingly, "[i]f a plaintiff prevails on an insubstantial set of her interrelated claims and obtains only limited relief, the trial court has discretion to shrink fees to reflect that inferior result." Coutin v. Young & Rubicam P.R., Inc., 124 F.3d 331, 338 (1st Cir. 1997). In exercising this discretion, courts may consider a variety of factors, referred to as the "Johnson factors."[5] Id. at 337 & n.3. The most important factor by far is the

---

[5]    The Johnson factors are:

(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney(s) due to acceptance of the case; (5) the customary fee; (6) the nature of the fee (fixed or contingent); (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney(s); (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) the size of awards in similar cases.

Coutin, 124 F.3d at 337 n.3.

results obtained, which looks to (1) the plaintiff's "claim by claim" success, (2) "the relief actually achieved," and (3) "the societal importance of the right which has been vindicated[.]" Id. at 338; see also Hensley, 461 U.S. at 440.

Here, Heredia failed on the vast majority of his claims and was unable to establish compensatory damages. In some cases, such failures could render a plaintiff's victory merely "technical" or de minimis, in which case "the only reasonable fee is usually no fee at all." See Farrar, 506 U.S. at 114-115; see also Diaz-Rivera v. Rivera-Rodriguez, 377 F.3d 119, 125 (1st Cir. 2004).

But Heredia's victory in this action, although undoubtedly limited, was more than simply de minimis. Heredia succeeded in vindicating an important constitutional right and secured punitive damages in the process. See Coutin, 124 F.3d at 339 n.5 ("the vindication of rights . . . plainly cuts against a reduction in fees . . . ."). This result conferred not only a benefit to Heredia, but also a benefit to the broader public by "encouraging [the city] to ensure that all of its police officers are well trained to avoid the use of excessive force, even when they confront a person whose conduct has generated the need for police assistance." Guy v. City of San Diego, 608 F.3d 582, 589 (9th Cir. 2010); accord Diaz-Rivera, 377 F.3d at 125 (finding that attorney's fees were warranted where "the determination that the [defendant] violated plaintiffs' constitutional rights represented a significant legal conclusion serving an important public purpose").

19

Moreover, there was not a significant "difference between the amount recovered and the damages sought[.]" Farrar, 506 U.S. at 121 (O'Connor, J., concurring) (relied on in Diaz-Rivera, 377 F.3d at 125). Heredia received little, to be sure, but he did not seek much. Cf. id. at 114 (finding that attorney's fees were not warranted where the plaintiff sought $17 million in compensatory damages but only received nominal damages). Heredia only requested compensatory damages for pain and suffering, which were always bound to be minimal given that Heredia could not challenge the lawfulness of his arrest or conviction. Doc. 104 at 8-9. Thus, although Heredia's monetary award was de minimis, his overall results were not.

In addition to the results obtained, I note that awarding a substantial portion of the lodestar amount would "provid[e] an incentive to attorneys to represent litigants, such as [Heredia], who seek to vindicate constitutional rights but whose claim may not result in substantial monetary compensation." O'Connor v. Huard, 117 F.3d 12, 18 (1st Cir. 1997). This incentive is particularly important where, as here, the plaintiff's culpability in the underlying incident and resulting criminal conviction could render it difficult to attract competent counsel.  See Blum v. Stenson, 465 U.S. 886, 897 (1984) ("a reasonable attorney's fee is one that is adequate to attract competent counsel, but that does not produce windfalls to attorneys.") (cleaned up); see also Gomez v. Gates, 804 F. Supp. 69, 75 (C.D. Cal. 1992)

(noting the undesirability of civil rights cases that "pit admitted criminals against law enforcement officers").

Considering Heredia's limited, but not wholly insubstantial, success, I conclude that Heredia's attorney's fees should be reduced by 33%. Cf. Diaz-Rivera, 377 F.3d at 122 (affirming a 33% fee reduction where the plaintiff succeeded on only one claim and failed to prove compensatory damages). This would provide the attorneys with $75,775.18 in fees, which is roughly in line with awards in similar cases. See, e.g., Wagner v. City of Holyoke, 404 F.3d 504, 509-510 (1st Cir. 2005) (per curiam) (affirming award of $72,840 to a plaintiff who failed on all but one of his claims and obtained only nominal damages); Stoedter v. Gates, 320 F. Supp. 3d 1265, 1282 (D. Utah 2018) (awarding $93,289.77 in attorney's fees where the plaintiff obtained only nominal damages against one of several defendants); Wolfe v. Routzahn, 953 F. Supp. 2d 627, 638 (D. Md. 2013) (awarding $100,000 in attorney's fees where an excessive force plaintiff obtained only nominal damages against one of several defendants).

C.    Out-of-Pocket Expenses

In addition to the hourly fees discussed above, Heredia seeks to recover $19,960.15 in expenses paid by his attorneys. "The attorneys' reasonable and necessary costs and expenses may be awarded to a prevailing party" under § 1988 so long as they are "related to [the plaintiff's] successful claims."

Culebras Enters. Corp. v. Rivera-Rios, 846 F.2d 94, 103 (1st Cir. 1988);

accord Hutchinson, 636 F.3d at 17. Roscoe asserts that several of Heredia's

claimed expenses were unnecessary to his excessive force claim and therefore

should be excluded from the award.

First, Roscoe seeks to exclude the cost of deposing Attorney Topham.

Because Attorney Topham's deposition was unnecessary for the reasons I

explained, I agree that expenses associated with that deposition must be

deducted.

Second, Roscoe seeks to exclude the cost of transcribing Heredia's bail

hearing, criminal trial, and plea hearing. The transcript of the plea hearing

was submitted to the court in support of Heredia's objection to the

defendants' motion for judgment on the pleadings and was critical to my

resolution of that motion, including my conclusion that Heredia's guilty plea

did not preclude him from arguing that he did not punch Stewart, which was

an important aspect of Heredia's excessive force claim. Doc. 12-4; Doc. 18 at

6. Additionally, Heredia's attorneys invoked Stewart's testimony at the

criminal trial to impeach her in front of the jury. Doc. 101 at 95-97. Because

the attorneys were not present for Heredia's criminal trial, they would not

have been able to identify inconsistencies in Stewart's testimony without the

transcripts.

Heredia has not, however, demonstrated, that the bail hearing transcript was necessary to his excessive force claim. Although the bail proceedings were arguably relevant to establishing damages on his fabrication of evidence claim, Heredia has not explained how they were in any way relevant to his excessive force claims. Accordingly, Heredia can recover the cost of the trial and plea transcripts, but not the cost of the bail hearing transcripts.

Finally, Roscoe seeks to exclude the costs associated with Heredia's retained use-of-force expert, who consulted with Heredia's attorneys but did not testify at trial. In West Virginia University Hospitals, Inc. v. Casey, the Supreme Court concluded that expert fees are not recoverable under § 1988. 499 U.S. 83, 97 (1991). Although Congress subsequently amended § 1988 to allow for the recovery of expert fees in some cases, the amendment only extended to "proceeding[s] to enforce a provision of section 1981 or 1981(a)[.]" 42 U.S.C. § 1988(c); see also Pub. L. 102-166, Title I, § 113, Nov. 21, 1991, 105 Stat. 1074, 1079. Because the amendment did not explicitly authorize expert fees in actions brought under § 1983, there is widespread agreement that "courts are not authorized to award expert fees for actions brought under § 1983." Drumgold v. Callahan, 806 F. Supp. 2d 428, 436 (D. Mass. 2011); see also Ruff v. Cnty. of Kings, 700 F. Supp. 2d 1225, 1243 (E.D. Cal. 2010) (collecting cases and noting the absence of any "authority that has permitted

an award of expert witness fees in a Section 1983 action pursuant to Section 1988(c)").

Heredia has not pointed to any cases to the contrary, nor has he identified any other statutory basis for an award of expert fees. See Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 445 (1987) (noting that expert fees are only recoverable where there is "explicit statutory or contractual authorization"). Accordingly, the $11,885.65 paid to Heredia's expert must be deducted from his award.[6]

In sum, I calculate Heredia's recoverable expenses as follows:

Expenses Requested:                                    $19,960.15

Line Item Deductions
   Fee for service of process to Topham:        -$61.00
   Topham deposition fee:                             -$785.00
   Bail hearing transcript:                             -$123.75
   Expert fees:                                            -$11,885.65
                                              Total:     $7,104.75

---

[6]      Roscoe argues that I should also exclude fees for time spent conferring with the expert. I disagree. That expert fees are not recoverable does not mean that the attorneys' time working with the expert is not recoverable. See Casey, 499 U.S. at 87 (concluding that expert witness fees were not recoverable only because there was no "explicit statutory authority"). An attorney's time spent working with an expert, like any other time expended on the case, should be included in a fee award to the extent reasonable. See Hensley, 461 U.S. at 435 n.11 (noting that an attorney's fee award should ordinarily "encompass all hours reasonably expended on the litigation"). Here, although Heredia's expert did not testify at trial, the attorneys' time conferring with the expert was reasonably necessary to develop the excessive force claim and prepare to cross-examine the defendants' use-of-force expert.

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, Heredia's motion for attorney's fees (Doc. 92) is granted in part and denied in part. Pursuant to 42 U.S.C. § 1988, Heredia is entitled to recover $75,775.18 in attorney's fees and $7,104.75 in out-of-pocket expenses, for a total award of $82,879.93.

SO ORDERED.

<u>/s/ Paul J. Barbadoro</u>
Paul J. Barbadoro
United States District Judge

April 19, 2024

cc:    Counsel of record